[L.A. No. 30570. June 4, 1976.]

DEBORAH J. CLIFTON et al., Plaintiffs and Appellants, v. RAYMOND SAMUEL ULIS, Defendant and Respondent.

DOLORES REID et al., Plaintiffs and Appellants, v. RAYMOND SAMUEL ULIS, Defendant and Respondent.

COUNSEL

Samuel A. Keesal, Jr., Stephen Young, Peter R. Boutin and Robert H. Logan for Plaintiffs and Appellants.

Hagenbaugh & Murphy and Michael Thomas for Defendant and Respondent.

OPINION

**SULLIVAN, J.**—In these consolidated actions for damages for wrongful death and for personal injuries, all plaintiffs appeal from a judgment entered on jury verdicts in favor of defendant Raymond Samuel Ulis and against the respective plaintiffs.

About 8:05 p.m. on the evening of August 11, 1970, plaintiffs' northbound automobile was involved in a head-on collision with defendant's southbound camper-pickup truck on Interstate Highway 5 near Los Angeles. The collision occurred in one of the southbound lanes of the highway. In support of their claim that defendant's negligence was the sole proximate cause of the collision, plaintiffs contended at trial that just before impact, defendant's truck had been weaving back and forth on the highway and had crossed over into the northbound lanes, forcing plaintiffs to take evasive action by crossing over into the southbound lanes, and that when defendant's truck suddenly swerved back to its proper lane, the vehicles collided. Of the six persons in plaintiffs' automobile, the three in the front seat were killed in the collision, and the three in the rear were severely injured.

Shortly before 10 a.m. on the day of the accident, defendant and his wife, Barbara Ulis, left Grass Valley, where they had been vacationing, to return to their home in Los Angeles. They stopped at a winery along the way to taste wines, and stopped again near Bakersfield for dinner. Plaintiffs' theory at trial was that defendant's vehicle crossed the highway center line just before the accident because defendant was fatigued, had fallen asleep, had been drinking, and/or was confused by highway construction near the scene of the accident. Consistent with this theory, plaintiffs presented two witnesses who testified at trial that at the scene of the accident and subsequently at the hospital, Mrs. Ulis was yelling or screaming "Where's my husband? Is my husband dead? We didn't mean to kill anybody. He just went to sleep. I tried to get my husband to take a rest."

Mrs. Ulis testified in the presence of the jury that the last thing she recalled before the accident was stopping for dinner and that she remembered nothing until about 10 days after the accident because of injuries to her head. On the basis of this testimony, plaintiffs attempted to introduce evidence of a telephone call which Mrs. Ulis allegedly made to the home of the deceased driver two to three days after the accident, during which she allegedly told Mrs. Anna Chatman, the mother of the deceased driver, and Mrs. Ruth Carr, a neighbor, that (1) her husband did not mean to kill anyone; (2) he had been tired and sleepy from the long drive; (3) he had had a bit of wine; (4) she had told him to stop and rest; and (5) he had fallen asleep at the wheel. Plaintiffs' theory was that the evidence constituted a prior inconsistent statement by Mrs. Ulis and therefore was admissible under an exception to the hearsay rule. (Evid.

Code, § 1235.) Defendant objected to the evidence as being hearsay and not falling within any exception to the hearsay rule.

Plaintiffs thereupon made an offer of proof in respect to the evidence of the alleged telephone call. To this end, a hearing was held outside the presence of the jury at which plaintiffs called Mrs. Chatman and Mrs. Carr who testified as to Mrs. Ulis' telephone call. Plaintiffs then called Mrs. Ulis to the stand, who, still out of the jury's presence, testified that her husband had not told her that he was tired, that she had not told him to stop and rest, and that he had not fallen asleep at the time of the accident.

The trial court sustained defendant's objection on the ground that the offered evidence did not come within the purview of the prior inconsistent statement exception to the hearsay rule. Relying on *People* v. *Sam* (1969) 71 Cal.2d 194 [77 Cal.Rptr. 804, 454 P.2d 700], the court ruled that the alleged telephone conversation was inadmissible because it was not inconsistent with Mrs. Ulis' testimony before the jury to the effect that she had no present recollection of the period following dinner on the evening of the accident until about 10 days later.

At a subsequent point in the trial, the court allowed plaintiffs to read to the jury Mrs. Ulis' testimony given by her outside the jury's presence in connection with plaintiffs' offer of proof. The testimony read to the jury included Mrs. Ulis' statements that her husband had not told her that he was tired, that she did not tell him to stop and rest, and that he had not fallen asleep at the wheel. After the jury had heard this testimony, plaintiffs again raised the issue of the admissibility of Mrs. Ulis' alleged telephone call. The court adhered to its ruling that evidence of the telephone call could not be admitted into evidence as a prior inconsistent statement.

■ Plaintiffs contend that the trial court committed prejudicial error in refusing to admit evidence of the alleged telephone call under the prior inconsistent statement exception to the hearsay rule. We agree.

Section 1235 of the Evidence Code[1] makes admissible the prior inconsistent statement of a witness not only to impeach his credibility but

---

[1]Section 1235 provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."

Section 770 provides: "Unless the interests of justice otherwise require, extrinsic

also to prove the truth of the matters stated. In *People* v. *Sam, supra,* 71 Cal.2d 194, we observed that "[i]n enacting section 1235 of the Evidence Code, the Legislature has retained the fundamental requirement that the witness' prior statement in fact be *'inconsistent* with his testimony at the hearing' before it can be admitted." (*Id.,* at p. 210.) Accordingly, we held that a witness' prior statement was inadmissible where the witness testified that he had no present recollection of the statement because there was nothing with which the prior statement could be inconsistent.

Fairly stated, *Sam* stands for no more than the proposition that "prior statements are not admissible to impeach a witness whose answers to questions are *exclusively* of the 'I-don't-remember' variety." (Jefferson, Cal. Evidence Benchbook (1972) § 10.1, p. 136; see *People* v. *Spencer* (1969) 71 Cal.2d 933, 942, fn. 10 [80 Cal.Rptr. 99, 458 P.2d 43].) In contrast to *Sam,* the case of *People* v. *Green* (1971) 3 Cal.3d 981 [92 Cal.Rptr. 494, 479 P.2d 998], involved a witness who gave evasive answers as well as claiming a lack of recollection. We held that such deliberate evasion constituted implied testimony of denial so that prior statements inconsistent with the implied testimony were admissible under Evidence Code section 1235. In reaching this result, we observed that "[i]nconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness' prior statement [citation], and the same principle governs the case of the forgetful witness." (*Id.,* at p. 988; see also *Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 699 [39 Cal.Rptr. 64].)

We need not have recourse to the *Green* rule in order to find that evidence of the alleged telephone call was admissible as a prior inconsistent statement. In the presence of the jury, Mrs. Ulis first testified that she had no recollection of the period of time following dinner on the evening of the accident until approximately 10 days later. It is clear that evidence of the telephone call was not admissible on the basis of this testimony since, under the *Sam* rule, Mrs. Ulis' lack of present recollection did not constitute testimony with which her telephone call could be inconsistent. In spite of Mrs. Ulis' subsequent testimony out of the jury's presence that her husband had not told her that he was tired, that she had not told him to stop and rest, and that he had not fallen asleep at the time of the accident, which directly contradicted the content

evidence of a statement made by a witness that is inconsistent with any part of his testimony at the hearing shall be excluded unless: (a) The witness was so examined while testifying as to give him an opportunity to explain or to deny the statement; or (b) The witness has not been excused from giving further testimony in the action."

of her alleged telephone call, the trial court properly excluded the proffered evidence. Since at that point Mrs. Ulis' contradictory testimony had not been heard by the jury, the question of admissibility was still controlled by *Sam*.[2]

The complexion of the trial changed, however, when such testimony was read to the jury. When plaintiffs again sought to introduce evidence of the telephone call, the trial court improperly continued to rely on *Sam* to support its exclusionary ruling. Mrs. Ulis' testimony no longer consisted exclusively of "I-don't-remember" answers. Rather, the jury had now heard her expressly deny that her husband had told her that he was tired, that she had told him to stop and rest, and that he had fallen asleep. Mrs. Ulis' prior hearsay statements made over the telephone to Mrs. Chatman and Mrs. Carr were clearly inconsistent with this express testimony of denial. Therefore, regardless of Mrs. Ulis' earlier testimony that she had no recollection of the accident or the 10-day period thereafter, when the subsequent testimony was read to the jury evidence of her telephone call at that point became admissible as a prior inconsistent statement, and the trial court erred in excluding it.[3]

Whether the trial court's error constitutes grounds for reversal depends on whether the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; Evid. Code, § 354.) In *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243], we stated that "a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is

---

[2]We assume that Evidence Code section 1235 reaches only that testimony which is heard by the trier of fact, inasmuch as it is the trier of fact who must weigh the inconsistency. The correctness of this assumption is implicit in the Law Revision Commission's comment to section 1235, which justifies the removal of prior inconsistent statements from the protection of the hearsay rule on the ground that since the trier of fact has the declarant before it and can observe his demeanor and the nature of his testimony, the trier is in "as good a position to determine the truth or falsity of the prior statement as it is to determine the truth or falsity of the inconsistent testimony given in court." In addition, the case law reflects that questions concerning the admissibility of prior inconsistent statements typically arise in the context of contradictory testimony heard by the jury. (See, e.g., *People* v. *Williams* (1973) 9 Cal.3d 24, 37-38 [106 Cal.Rptr. 622, 506 P.2d 998].)

[3]We are not here confronted with the situation in which the witness testifies at a hearing other than the one at which the question of the admissibility of a prior inconsistent statement arises. (See *People* v. *Rojas* (1975) 15 Cal.3d 540, 548 [125 Cal.Rptr. 357, 542 P.2d 229].) The testimony of Mrs. Ulis was given by her at trial, the very hearing at which the admissibility of her prior inconsistent statements arose. The fact that she first testified to the telephone call outside of the jury's presence does not alter this conclusion since her testimony was subsequently read to the jury.

reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Id.,* at p. 836.)

■ Application of the *Watson* standard compels the conclusion that a miscarriage of justice resulted in this case. The question of whether defendant had fallen asleep at the wheel was of the utmost importance to plaintiffs. Exclusion of the telephone call forced plaintiffs to rely upon the spontaneous statements made by Mrs. Ulis at the scene of the accident and at the hospital to prove that defendant was asleep at the time of the collision. The alleged statements made by Mrs. Ulis over the telephone two or three days after the accident were consistent with the statements she made while in a hysterical state. Had the proffered evidence been admitted, the jury might have accepted plaintiffs' theory that defendant's negligence was the sole proximate cause of the collision. Under such circumstances, it is quite probable that a result more favorable to plaintiffs would have been reached in the absence of the trial court's error. Accordingly, the judgment must be reversed.

In view of our disposition of this case, it is unnecessary to address plaintiffs' remaining contentions.

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Clark, J., and Richardson, J., concurred.