[Civ. No. 68831. Second Dist., Div. Seven. July 3, 1984.]

LOFTLEIDIR ICELANDIC AIRLINES, INC., Plaintiff and Appellant, v. McDONNELL DOUGLAS CORPORATION, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

---

*This opinion is certified for partial publication pursuant to rules 976 and 976.1 of the California Rules of Court. The published portions of this opinion consist of the opening three paragraphs, the statement of facts (section I) and sections II and III. The unpublished portion of this opinion concerns well-settled areas of the law and the heading which relates to this section is designated with an asterisk (*).

84

**COUNSEL**

Condon & Forsyth, Frank A. Silane, Peter James McBreen and Patrick D. Bingham for Plaintiff and Appellant.

Belcher, Henzie, Biegenzahn, Chertok & Walker, E. Lee Horton and James M. Derr for Defendant and Respondent.

OPINION

**JOHNSON, J.**—This appeal arises out of the crash of a DC-8 airplane operated by plaintiff, Loftleidir Icelandic Airlines, Inc. (Loftleidir), and manufactured by defendant, Douglas Aircraft Company, Inc. (Douglas). The jury returned a verdict in favor of Douglas. Loftleidir appeals raising two claims of error, both relating to trial court orders excluding evidence.

Loftleidir first argues the trial court erred by excluding evidence of three of the six prior airplane accidents Loftleidir sought to have admitted at trial. In the unpublished portion of this opinion we hold that although evidence of those accidents was relevant the trial court could properly exclude it under Evidence Code section 352.

Loftleidir also argues the court erred by excluding the testimony of one of its expert witnesses. The court excluded the testimony on the ground it was prohibited by 49 Code of Federal Regulations, section 835 et seq. Those regulations govern the permissible scope of a National Transportation Safety Board (NTSB) employee's testimony. In the published portion of this opinion we hold exclusion of the expert's testimony was prejudicial error. The federal statute prohibits introducing into private litigation evidence of the NTSB's opinions about the probable cause of an airplane accident. Since Loftleidir's expert did not investigate the subject accident while employed by the NTSB there was no chance his testimony would reveal the prohibited matter.

I. *Statement of Facts and Proceedings Below*

On June 23, 1973, a 1966 model DC-8 airplane operated by Loftleidir crashed while on approach to John F. Kennedy International Airport in New York. The accident occurred because the pilot prematurely extended the ground spoilers[1] when the airplane was about 30 feet above the runway. There were no deaths among the 119 passengers and 9 crew members, but 2 stewardesses and 36 passengers were injured.[2] The crash also resulted in heavy damage to the aircraft.

Loftleidir filed this action against Douglas for property damage and loss of use on June 2, 1976. On August 27, 1981, the case proceeded to trial on

---

[1]The ground spoilers consist of 10 hinged panels on the upper surface of the wings. They are designed to reduce lift, increase drag and enhance braking on landing or during an aborted takeoff. The ground spoilers have no in-flight function.

[2]At the time of this appeal all personal injury claims arising out of the accident had been resolved.

theories of strict liability and negligence.[3] Loftleidir's primary contention was the DC-8 should have been designed to preclude in-flight deployment of the ground spoilers. If premature extension of the ground spoilers had been impossible the accident would not have occurred. According to Loftleidir, Douglas was negligent and/or strictly liable for designing a system capable of in-flight deployment.

Much of the testimony at trial concerned the design history and operation of the ground spoiler system on DC-8 airplanes. The DC-8 was originally designed with what was labeled at trial as the Mark I anti-skid system. Although the ground spoilers were not designed to perform any in-flight function, the Mark I system was capable of in-flight deployment. However, in order to deploy the spoilers in-flight, the crew would have to overcome 65 to 70 pounds of resistance in order to move the spoiler handle. When the plane was on the ground there was only about nine pounds of resistance to overcome in order to move the spoiler handle.

In 1962 the Mark II anti-skid system was introduced to improve some of the features of the Mark I system. As a result of design changes, however, Douglas reduced the amount of resistance to overcome in order to move the spoiler handle in-flight from 65 pounds to 35 pounds. The Mark II design also required the addition of an electric actuator to the spoiler system. If on takeoff the actuator did not coast to the full retract position, or if after takeoff the actuator received a spurious signal, the pilot would encounter only nine pounds of spring resistance before the spoiler handle could be moved in-flight.

There were no accidents involving in-flight deployment of the ground spoilers before 1962 while DC-8's were equipped with the Mark I anti-skid system. However, the record in this case reflects six accidents or incidents involving DC-8's equipped with the Mark II system. Each of the accidents was caused in some form or fashion by the in-flight deployment of ground spoilers.

Three of the six accidents were caused, as in this case, by crew members inadvertently deploying the ground spoilers. The fourth and fifth accidents were caused by an electrical malfunction which in turn caused deployment of the ground spoilers. The cause of the final accident was in dispute. The trial court ruled evidence of the three accidents where crew members de-

---

[3]The action was brought against Douglas and other defendants. The defendants filed a number of cross-complaints against each other which were severed prior to trial and are not involved in this appeal.

ployed the spoilers was admissible. However, the court excluded most of the evidence related to the three other accidents.

On August 4, 1981, Douglas filed another motion in limine, this time to exclude the testimony of Charles O. Miller, one of Loftleidir's expert witnesses and a former employee of the NTSB. Douglas argued Miller's testimony was prohibited by 49 Code of Federal Regulations, section 835.7. That statute sets forth the permissible scope of testimony of former employees of the NTSB.

Loftleidir intended to call Miller, an expert on human factors and safety engineering in aviation, and the president and principal consultant of System Safety Incorporated, as its primary expert witness. Miller was to testify extensively regarding the design of the ground spoiler system from an engineering and human factors standpoint. Miller also intended to testify with respect to Douglas' duty to anticipate and to react to safety problems which developed during the design and service life of the DC-8.

Miller was the director of the Bureau of Aviation Safety at the time of the accident. The Bureau of Aviation Safety is responsible for investigating aircraft accidents for the NTSB.

On August 27, 1981, the court indicated it was inclined to permit Miller's testimony provided no reference was made to the opinions contained in the NTSB report of the Loftleidir accident or to Miller's former status as director of the Bureau of Aviation Safety. However, after additional argument by Douglas, the court reserved its ruling until an evidentiary hearing could be held. The hearing was held on September 4, 1981, one week after the trial began. After the hearing, the court again reserved its ruling asking for additional argument by counsel. This argument was heard on September 8, 1981, after which the court granted Douglas' motion to exclude Miller's testimony.

On September 24, 1981, after approximately three weeks of trial, the jury returned a verdict in favor of Douglas on both the strict liability and negligence counts. In answer to interrogatories the jury found the DC-8 was not defective and Douglas was not negligent.

Judgment was entered in favor of Douglas on September 25, 1981. On November 12, 1981, Loftleidir's motion for a new trial was denied. Loftleidir filed a timely notice of appeal.

. . . . . . . . . . . . . . . . . . . . . . . . . *

## II. *The Court Erred by Excluding Miller's Testimony*

Two weeks after the trial began in this case the trial court granted Douglas' motion in limine and excluded Loftleidir's expert, Miller, from testifying. Although the precise grounds for the court's ruling on Douglas' motion to exclude the testimony of Miller are not clear from the record, the court must have concluded either: (1) Miller was prohibited from testifying at trial under the terms of 49 Code of Federal Regulations, section 835.5; (2) Miller was prohibited from testifying under the terms of 49 Code of Federal Regulations, section 835.3; or (3) Miller was precluded from testifying based upon alleged inconsistencies between Miller's contemplated testimony and the opinions and conclusions contained in the NTSB final report.[7] As we explain, we do not believe any of these grounds provides a permissible basis for excluding the testimony.

 We note at the outset when an appeal involves the scope and applicability of a statute we are not bound by the trial court's determinations. (*Southern California Edison Co.* v. *State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8 [102 Cal.Rptr. 766, 498 P.2d 1014].) Thus the issue before us is a question of law, subject to this court's independent review.

 The testimony of current NTSB employees is governed by 49 Code of Federal Regulations, section 835.5. Subsection (a) provides: "(a) Testimony of Board employees may be made available for use in actions or suits for damages arising out of accidents through depositions or written interrogatories. Board employees are not permitted to appear and testify in court in such actions." Thus, although an NTSB employee may be deposed and may respond to interrogatories his live testimony at trial is absolutely prohibited.[8] This statute clearly does not apply to Miller as he is not a current NTSB employee. It thus does not provide a legally sufficient basis for excluding his testimony.

---

*See footnote, *ante,* page 83.

[7]Douglas cites various passages of the reporter's transcript out of context and argues the trial court based its order excluding Miller's testimony at least in part on Evidence Code section 352. However, a review of the entire record of the arguments and rulings relating to the exclusion of Miller's testimony persuade us the sole ground for exclusion was the Code of Federal Regulations.

[8]Loftleidir suggests section 835.5 was designed to insure current NTSB employees are not distracted from their jobs by the constant need to appear as witnesses at trial. Loftleidir further suggests no such protection is required in the case of a former Board employee and hence such individuals are not included within the prohibition contained in section 835.5.

The testimony of former NTSB employees is governed by Code of Federal Regulations, section 835.7 which provides as follows: "It is not necessary to request Board approval for testimony of a former Board employee. However, the scope of testimony of former Board employees is limited to the matters delineated in § 835.3, and use of reports as prescribed in § 835.4."

Section 835.7 specifically incorporates by reference the provisions of sections 835.3 and 835.4 dealing with the scope of permissible testimony and the use of accident reports while testifying. However, section 835.7 does not incorporate the provisions of section 835.5 prohibiting live testimony at trial.

49 Code of Federal Regulations, section 835.3, which governs the testimony of current and former employees, provides as follows: "Section 835.3. Scope of permissible testimony.

"(a) Section 701(e) of the FA Act and section 304(c) of the Safety Act preclude the use or admission into evidence of Board accident reports in any suit or action for damages arising from accidents. The purpose of these sections would be defeated if expert opinion testimony of Board employees, which is reflected in the ultimate views of the Board expressed in its report concerning the cause of an accident, were admitted in evidence or used in private litigation arising out of an accident. The Board relies heavily upon its investigators' opinions in determining the cause or probable cause of an accident, and the investigators' opinions thus become inextricably entwined in the Board's determination. Furthermore, the use of Board employees as experts to give opinion testimony would impose a serious administrative burden on the Board's investigative staff. Litigants should obtain their expert witnesses from other sources.

"(b) Consistent with paragraph (a) . . . *Board employees may testify as to the factual information they obtained during the course of the accident* investigation, including factual evaluations embodied in their factual accident reports. However, they shall decline to testify regarding matters beyond the scope of their investigation, or to give opinion testimony concerning the cause of the accident." (Italics not in original.)

■ Section 835.3 specifically acknowledges many of the opinions and conclusions reached by the NTSB accident investigators are ultimately reflected in the NTSB's finding of the probable cause of an accident. To preclude the introduction of evidence of these opinions and conclusions, 49 Code of Federal Regulations, section 835.3(b) only permits NTSB investigators to testify about factual information they obtained while investigating

an accident. Accordingly, courts have consistently held section 835.3 only prohibits these NTSB accident investigators from rendering opinions concerning the NTSB's finding on the probable cause of an accident. (*Carlson* v. *Piper Aircraft Corp.* (1982) 57 Ore.App. 695 [646 P.2d 43], pet. den. (1982) 293 Ore. 801 [653 P.2d 999]; *Murphy* v. *Colorado Aviation, Inc.* (1978) 41 Colo.App. 237 [588 P.2d 877]; *Keen* v. *Detroit Diesel Allison* (10th Cir. 1978) 569 F.2d 547; *Kline* v. *Martin* (E.D. Va. 1972) 345 F.Supp. 31.)

For example, in *Murphy* v. *Colorado Aviation, Inc., supra,* 588 P.2d 877, the witness was the supervisor and coordinator of the NTSB team assigned to investigate the crash involved in the action and the author of the NTSB factual report. Over the defendant's objection, the witness rendered several opinions as to factual matters. Essentially, the witness testified that in his opinion only an IFR pilot should fly in clouds; that there was a safe VFR route available at the time of the crash; and, that only an IFR pilot was properly qualified to be flying at the altitude at which the crash occurred. In holding this testimony was admissible the court noted as follows: "This section [49 U.S.C. Section 1441(e)] most recently has been interpreted narrowly by both state and federal courts, which have held that air safety investigators may give their opinions, as well as relate factual evidence, so long as they do not testify to their own or the Board's ultimate conclusion concerning the probable cause of the accident or the negligence of the defendant." (*Id.* at pp. 881-882.)

The court conceded the investigator's testimony led to the conclusion the accident was caused by pilot error. Nonetheless, the testimony was permissible because the witness never actually rendered an opinion the accident was caused by pilot error. (*Id.,* at p. 882.)

 Douglas next claims any opinions or conclusions reached by Miller concerning the cause of the Loftleidir accident were formulated as part of his official duties with the NTSB and so section 835.7 prohibits his testimony. We agree if this were the case section 835.7 would preclude Miller from testifying because his opinions would be "inextricably entwined" in the opinions of the NTSB. However the record clearly demonstrates while Miller was employed by the NTSB he had no investigative function whatsoever over the Loftleidir accident.

At his deposition on March 30, 1981, and at the evidentiary hearing held during the trial, Miller was examined extensively regarding his involvement in the NTSB investigation of the Loftleidir accident. Miller testified as director of the Bureau of Aviation Safety he was not personally involved in

the field investigation of the crash. Rather, William H. Collins was the chief investigator of the accident. Miller did admit he initialed and forwarded the report and recommendations prepared by Collins to the board. However, he also testified his only information with respect to the accident was contained in the report itself and was not gathered through any personal investigation.

It is clear from the record while Miller was employed by the NTSB he did not actively participate in investigating the Loftleidir accident. Indeed he testified his knowledge of the specific facts of the accident was based on his independent investigation conducted after he was retained by Loftleidir as an expert consultant. We reiterate 49 Code of Federal Regulation, section 835.3 has been interpreted to apply only to the opinions and conclusions reached by the NTSB concerning the probable cause of an accident; factual information contained in the NTSB report is admissible. (See, e.g., *Aviation Enterprises, Inc.* v. *Cline* (Mo.App. 1965) 395 S.W.2d 306; see also, *Kline* v. *Martin, supra,* 345 F.Supp. 31.) Since Miller's own opinions and conclusions were derived after he left the NTSB, his opinions could hardly reflect the NTSB's views on probable cause. Accordingly section 835.3 does not provide a sufficient basis for excluding the testimony.

A former NTSB employee must also comply with the provisions of 49 Code of Federal Regulations, section 835.4, governing the use during testimony of NTSB accident reports. That section provides: "(a) A Board employee may use a copy of his factual accident report as a testimonial aid, and may refer to that report during his testimony or use it to refresh his memory.

"(b) Consistent with section 701(e) of the FA Act and section 304(c) of the Safety Act, a Board employee may not use the Board's accident report for any purpose during his testimony." ▮ The purpose for this provision, as for 49 Code of Federal Regulation, section 835.3, is to avoid introducing into private litigation the NTSB's opinion regarding the probable cause of an accident.[9]

---

[9]"It appears that the statute excluding NTSB reports and the regulation limiting investigator testimony are considered necessary for the NTSB to function independently in its investigations and consequently to be more effective in preventing future accidents. One writer explains: 'The conclusions in the report are directed solely towards air safety and government regulation. Problems of legal liability are not considered, and conclusions concerning it are avoided. The [Board] is free to speculate, and it sometimes bases its conclusions on conjecture. Unsolved accidents are disquieting and not conducive to public confidence in the reliability of air transport. Therefore, in the author's opinion, the Board feels a strong pressure from the public, the industry, and the executive and legislative branches of the Federal Government to reach a finding of probable cause.' (Speiser, *Airline Passenger*

■ Apparently Douglas is arguing 49 Code of Federal Regulations, section 835.4's prohibition against use of the NTSB's accident report would preclude effective cross-examination of Miller should his testimony be held admissible.[10] It is clear the NTSB accident report conflicts in part with Miller's opinions about the cause of the Loftleidir crash. The NTSB, in its accident report, concluded the principal cause of the accident was the crews' inadvertent deployment of the spoilers. The NTSB also concluded there was no failure or malfunction of the ground spoiler system. Miller apparently planned to testify, based on his independent investigation, the probable cause of the accident was the inherently dangerous design of the ground spoiler system from a human factors standpoint.

As noted, the trial court initially indicated it would allow Miller to testify provided no reference was made to Miller's tenure with the NTSB. However, counsel for Douglas then argued if Miller testified Douglas would be unable to impeach him with the NTSB final report which Miller had initialed.

Douglas does not dispute it could have impeached Miller with respect to the factual matters contained in the NTSB report. Its only contention is Miller could not be impeached with the NTSB's finding on probable cause.

---

*Death Cases*, § 49, p. 241 (1965).)

"In *Berguido* v. *Eastern Airlines, Inc.* 317 F.2d 628, 631 (3rd Cir. 1963), the court stated: 'The fundamental policy underlying [the statute] appears to be a compromise between the interest of those who would adopt a privilege in order to secure full and frank disclosure as to the probable cause and thus help to prevent future accidents, and the countervailing policy of making all accident information available to litigants in a civil suit.'

"In *Lobel* v. *American Airlines* 192 F.2d 217, (2d Cir. 1951) cert. den. 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703 (1952), the court found that the statutory provision 'was designed to guard against the introduction of [Board] reports expressing agency views about matters which are within the functions of court and jury to decide.' 192 F.2d at p. 220.

"Legislative history suggests that the congressional purpose in excluding NTSB reports is to protect the integrity of the Board's accident investigation function by preventing involvement in liability litigation. Civil Aeronautics Board, Legislative Program, 86th Cong.2d Session Item 5, p. 14. See 1 Kreindler, Aviation Accident Law § 18.01(2) p. 601 (1963)." (*Carlson* v. *Piper Aircraft Corp.*, *supra*, 646 P.2d 43, 48-49, fn. 10, pet. den. (1982) 653 P.2d 999.)

[10]Douglas also argued Miller's testimony was properly excluded because the NTSB denied Douglas' Freedom of Information Act (FOIA) request for disclosure of certain documents related to the Loftleidir accident. Without being able to determine the contents of these documents, according to Douglas, effective cross-examination of Miller was precluded. Loftleidir merely asserts the NTSB always refuses to release what it considers to be confidential information and yet NTSB investigators continue to appear as witnesses.

Here, NTSB's denial of Douglas' FOIA request was based on a governmental privilege. (5 U.S.C. § 552(b)(5); 49 C.F.R., § 801.54.) Loftleidir had nothing to do with the assertion of any privilege. Under these circumstances we refuse to hold a private party litigant accountable by disallowing its witness' testimony simply because the public entity exercises a privilege to withhold information.

We note the NTSB report is a public record, available for review to any litigant or expert. Moreover, *any* expert witness who testified the probable cause of the accident was different from the NTSB's finding of probable cause could not be impeached by referring to the NTSB's finding. The only difference in this case is Miller, even if he did not investigate the accident, did initial the final report.

Miller was not being called to testify with respect to the NTSB investigation of the accident or with respect to the probable cause findings made by the NTSB. Rather, Miller was retained as an independent expert to render an opinion regarding the design of the DC-8 ground spoiler system from a human factors standpoint and to analyze the adequacy of Douglas' safety engineering program. Furthermore, Loftleidir specifically agreed not to mention on direct examination Miller's tenure with the NTSB. Under the circumstances it is clear Miller's proposed testimony was unrelated to his tenure with the NTSB and was also outside the purview of 49 Code of Federal Regulation, section 835 et seq.

49 Code of Federal Regulations, section 835 et seq. was designed to prevent disclosure of the deliberative process leading to the NTSB's determination of probable cause. Miller's proposed testimony would not have undermined this policy as it was not based on any privileged information and would not have reflected any of the deliberations of the Board. Given the crucial nature of Miller's testimony to Loftleidir's case, discussed *infra,* it was error to exclude it.

III.　█　*Since if Miller Had Been Allowed to Testify a Verdict for Loftleidir Would Have Been Reasonably Probable, the Judgment Must Be Reversed*

The parties agree Miller was called to testify in two areas: design of the spoiler system from a human factors standpoint; and Douglas' duty to redesign the spoiler system after notice it was unreasonably dangerous based on three prior accidents involving crew members' inadvertent deployment of the ground spoilers. Douglas argues exclusion of Miller's proposed testimony was harmless on the ground Loftleidir elicited identical testimony in these areas from its expert, Norman Birch, and during cross-examination of Douglas' witnesses. We disagree.

█　The standard for deciding whether the erroneous refusal to admit evidence constitutes grounds for reversal is well-settled. A case will be reversed for trial error only when the error results in a "miscarriage of justice." (*Clifton* v. *Ulis* (1976) 17 Cal.3d 99, 105-106 [130 Cal.Rptr. 155,

549 P.2d 1251].) Our high court has held such a miscarriage of justice occurs when, after an examination of the entire record the appellate court "is of the opinion that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Ibid.*, citing *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see also Code Civ. Proc., § 475.)

Birch testified he was retained by Loftleidir to assist in preparing visual displays of the ground spoiler system and to determine why the Loftleidir pilot was unable to arm the spoiler system in the normal manner on the night of the accident. The bulk of his testimony concerned the mechanical operation of the ground spoiler system.

██ Douglas points to two opinions offered by Birch which Douglas claims were identical to Miller's proposed testimony. First Birch expressed the opinion the actuator selected by Douglas was not suitable for use in the DC-8 ground spoiler system. In addition, Birch testified if a correctly functioning device to lock-out the ground spoiler system in-flight, the Loftleidir accident would not have occurred.

On direct, Birch's testimony was limited to the characteristics of the actuator and their impact on the mechanical operation of the spoiler system. He offered no testimony with respect to the design of the system from a human factors standpoint. He also offered no testimony on the issue of whether Douglas was negligent in failing to redesign the spoiler system after the Douglas' notice of the three prior airplane accidents which were admitted into evidence. We accordingly reject Douglas' argument Birch's testimony was sufficiently close to Miller's proposed testimony to make the erroneous exclusion of Miller's testimony harmless.

Douglas next contends the testimony elicited by Loftleidir during cross-examination of two Douglas witnesses was also similar to Miller's proposed testimony. A review of the testimony offered by these two Douglas engineers persuades us the contention is without merit. Mr. Dundore testified it was Douglas' duty to anticipate the possibility of human error when designing the spoiler system. Mr. Divola testified it was Douglas' duty to redesign the system if the service history of the DC-8 revealed the system was unsafe. However neither one of these witnesses offered the opinion Douglas was in fact negligent for failing to redesign the system. And even more critical to Loftleidir's case, neither of them explained the possibility the failure to design a positive lockout was negligent from a human factors standpoint.

Loftleidir's theory of recovery was that a design which allowed the spoilers to deploy in-flight was unreasonably dangerous in light of the prior similar accidents. To rebut this theory Douglas claimed the sole cause of the Loftleidir accident was pilot error. If the Loftleidir pilot had not attempted to arm the spoiler handle in-flight, the accident would not have occurred. Miller was to be Loftleidir's only expert with respect to the defective design of the system from a human factors standpoint. When Miller's testimony was excluded Loftleidir was deprived of its only opportunity to show the jury that even if the Loftleidir pilot caused the accident, Douglas was negligent for maintaining a system susceptible to this type of pilot error. We are of the opinion it is reasonably probable a verdict in favor of Loftleidir might have been reached if Miller had been allowed to testify.

■ Douglas nevertheless argues Loftleidir is precluded from claiming prejudice on the ground Loftleidir declined the trial court's offer to allow the testimony of some other expert. This offer was made at the beginning of the second week in a three-week trial. Indeed we find the most compelling reason for finding prejudice was the timing of the order prohibiting Miller's testimony. Given the complexities of this case, Loftleidir's claim it would have been impossible to find an expert at such a late date appears valid.

### DISPOSITION

The order denying the motion for new trial is reversed.

Thompson, Acting P. J., and Ryburn, J.,* concurred.

A petition for a rehearing was denied July 23, 1984.

---

*Assigned by the Chairperson of the Judicial Council.