UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-21082
_____


MELVA CAMPBELL, Individually and as the Natural Mother
and Next Friend of Marisol Campbell, Vanessa Campbell,
Thomas Campbell, Penelope Campbell, and Nakita Campbell,
minors; and as personal representative of the Estate of
Thomas Campbell; MARISOL CAMPBELL; VANESSA CAMPBELL;
THOMAS CAMPBELL; NAKITA CAMPBELL; PENELOPE CAMPBELL,

Plaintiffs-Appellants/Cross-Appellees,

versus

KEYSTONE AERIAL SURVEYS, INCORPORATED; ET AL.,

Defendants,

KEYSTONE AERIAL SURVEYS, INCORPORATED,

Defendant-Appellee/Cross-Appellant.
_____

Appeals from the United States District Court for the
Southern District of Texas
_____
April 13, 1998

Before REYNALDO G. GARZA, KING, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

On May 28, 1994, a Cessna 320E airplane crashed into the wall

of a canyon near Battle Mountain, Nevada.  Steve Fish, the pilot,

and Thomas Campbell were killed in the accident.  The pilot was

employed by Keystone Aerial Surveys, Inc. ("Keystone"), and

Campbell was conducting aerial magnetic surveys for Keystone.  This

appeal arises out of a wrongful death and survival action brought

by Melva Campbell, Thomas Campbell's widow, and his five children, against Keystone.[1]

                                    I.

Thomas Campbell began working for Keystone in April 1994 as an "air mag operator," conducting aerial magnetic surveys to record geological patterns in designated areas.  This kind of surveying requires low-level flight operations; at times, a pilot may fly a plane no more than 200 to 500 feet above the ground.  The area that Fish and Campbell were surveying at the time of the accident has been described as hilly or mountainous.  One witness described it as a "box canyon."  The plane, which had been flying at a low altitude inside the canyon, crashed into a wall of the canyon.

The Campbells' negligence theory was that the plane crashed as a result of a "controlled flight into terrain."  That is, they contended that the pilot had control of the plane but crashed into the terrain either because he did not see it or because he simply did not leave enough time and space to avoid it.  Keystone denied that the accident resulted from pilot error and offered a number of possible alternative explanations for the crash through the testimony of their expert, Warren Wandell.

The district court granted Keystone's motion to bifurcate the trial into a liability and compensatory damages portion and a

_____

[1]       The Campbells also brought suit against Keystone's subsidiaries, Airmag Surveys, Inc. and Precision Surveys, Inc. The district court dismissed these defendants before trial, and the Campbells do not appeal their dismissal.

punitive damages portion.  The liability and compensatory damages portion was tried to a jury, which failed to find that any negligence on Fish's part proximately caused the accident.  The district court rendered judgment on the jury's verdict, and this appeal followed.

## II.

The Campbells raise a variety of challenges to the testimony of Keystone's expert witness, Warren Wandell.  First, they argue that the district court abused its discretion in allowing Wandell to testify because he was not timely designated.  Second, they argue that the district court erred in allowing Wandell to testify because he had been employed by the National Transportation Safety Board ("NTSB" or the "Board") in the office that investigated this plane crash, and federal regulations prohibit NTSB employees from offering opinion testimony.  Because we conclude that the district court abused its discretion in allowing Wandell's late-designated testimony, we vacate the district court's judgment as to liability and damages and remand for a new trial on these issues.[2]

---

[2]     Because appellants' specific challenges to Wandell's testimony, including their claims that his testimony violated *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), and that he impermissibly testified regarding "probable cause," may or may not arise in the new trial granted herein, we do not address them here.

A.

Appellants first argue that the district court should have refused to allow Wandell's testimony because Keystone designated him as an expert witness outside the deadline set by the district court's scheduling order. Keystone first designated Wandell on August 1, 1996, approximately eight months after the scheduling order deadline, nearly three months after a pretrial order listing trial witnesses was entered, and only seven-and-a-half weeks before trial. Although the Campbells filed a motion to strike Wandell's testimony on August 13, 1996, the district court did not rule on that motion until the first day of trial. The district court then denied the motion to strike and allowed the Campbells to depose Wandell during the afternoon of the second day of trial.

We review the district court's decision to allow testimony by a late-designated expert for abuse of discretion. *Bradley v. United States*, 866 F.2d 120, 124 (5th Cir. 1989). We have held that the district courts have "wide latitude" in pretrial matters and must be allowed to act with "intelligent flexibility" in this arena. *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971). We have instructed the district courts to consider four factors in determining whether the testimony of a late-designated expert witness should be permitted: (1) the importance of the witness's testimony; (2) the prejudice to the opposing party if the witness is allowed to testify; (3) the possibility that a continuance would cure potential prejudice; and (4) the explanation given for the failure to identify the witness. *Bradley*, 866 F.2d at 124 (citing

5

*Murphy v. Magnolia Elec. Power Ass'n*, 639 F.2d 232, 235 (5th Cir. 1981)).

In ruling on the Campbells' motion to strike, the district court failed to consider these factors. Instead, the district court simultaneously considered a motion by Keystone to strike the Campbells' expert on pilot negligence, Richard L. Taylor, and stated:

> Here's what I am going to do, I am going to decide today whether Mr. Taylor testifies. If Mr. Taylor testifies, he gets Wandell. If Mr. Taylor doesn't testify, he doesn't get Wandell. That's the way its going to be.

In short, the district court failed to analyze independently whether the plaintiff's expert and the defendant's expert should have been allowed to testify.

Applying the *Bradley* factors, we conclude that the district court abused its discretion by allowing Wandell to testify. Not only did Keystone fail to proffer any explanation for its failure to designate Wandell in a timely fashion,[3] but the potential prejudice to the Campbells resulting from the district court's decision to allow Keystone to designate an expert in accident reconstruction shortly before trial was plain and substantial. Before Wandell was designated, Keystone had not identified a single expert witness on liability issues. The Campbells prepared their case on the assumption that theirs would be the only liability expert, apparently confident that Taylor's testimony would

---

[3] Counsel for Keystone stated only that he "got in this case late," and in effect conceded that this was not an excuse for the late designation.

6

withstand cross-examination and be sufficient to support a jury verdict in their favor in the absence of an opposing expert. Keystone's sudden designation of Wandell left the Campbells with an inadequate opportunity to adapt the presentation of their case in light of his testimony, by, for example, obtaining and developing the testimony of their own accident reconstruction expert and preparing to cross-examine Wandell. *See Bradley*, 866 F.2d at 125.[4]

Wandell's testimony was unquestionably important. Indeed, it was devastating to the Campbells' case: based on photographs of the accident scene and other investigation, Wandell cogently refuted Taylor's testimony that the accident resulted from a "controlled flight into terrain" due to pilot negligence and offered alternate explanations for the crash. Moreover, counsel for Keystone cross-examined Taylor extensively to expose that he, unlike Wandell, was not an accident reconstructionist.

The district court failed to consider whether the potential prejudice to the Campbells could be cured by a continuance. That neither party in this case requested a continuance is not surprising: the trial had already been continued twice, once over the Campbells' objection. As this court recognized in *Bradley*, when an expert is designated outside the deadline set by the district court in a case that has already been continued (in

---

[4]     Although the Campbells might have hastened to depose Wandell when he was identified and his report was produced in August, we are reluctant to require a party faced with a late-designated expert to cure the potential prejudice caused by the late designation before the district court has ruled on a motion to exclude the testimony.

7

*Bradley*, three times), the party opposing the late-designated expert is put in the "untenable position" of agreeing to a continuance or going forward with an improperly designated witness. *Id.* at 127 n.11. A continuance may nevertheless be the appropriate way in which to handle a late designation, especially where the expert's testimony is important. Indeed, we have repeatedly emphasized that a continuance is the "preferred means of dealing with a party's attempt to designate a witness out of time . . . ." *Id.* (citations omitted). In this case, however, the district court failed to consider this option and instead required the plaintiffs to depose Wandell the afternoon of the second day of trial.

For these reasons, we conclude that the district court abused its discretion by allowing Wandell's testimony without allowing the Campbells an opportunity to obtain their own expert accident reconstructionist and time to prepare to cross-examine Wandell. Accordingly, we remand the case to the district court for a new trial on the issues of liability and damages. "Before the new trial is begun, of course, the district court should consider any further appropriate discovery and should allow the parties to prepare the presentation of their cases in light of [the expert's] expected testimony." *Bradley*, 866 F.2d at 127. The court may also consider whether it should impose sanctions on Keystone for the breach of its duties under the Federal Rules of Civil Procedure. *See id.*

B.

The Campbells also argue that the district court should have excluded all opinion testimony offered by Warren Wandell because he was formerly employed by the NTSB in the office that investigated the plane crash in question. Federal regulations strictly limit the testimony that NTSB employees may offer in both criminal and civil proceedings. *See* 49 C.F.R. §§ 835.1-835.9. The stated purposes of the regulations are to

> ensure that the time of Board employees is used only for official purposes, to avoid embroiling the Board in controversial issues that are not related to its duties, to avoid spending public funds for non-Board purposes, to preserve the impartiality of the Board, and to prohibit the discovery of opinion testimony.

49 C.F.R. § 835.1.

Current NTSB employees are precluded from offering expert opinion testimony, *id.* § 835.3(a), and "may testify only as to the factual information they obtained during the course of an investigation." *Id.* § 835.3(b). Further, current NTSB employees are allowed to refer to a copy of their factual investigation report, but are prohibited from referring to the NTSB accident report, *id.* § 835.4, which typically contains the NTSB's opinions and probable cause finding. Federal law flatly prohibits the NTSB accident report from being admitted into evidence in any suit for damages arising out of accidents investigated by the NTSB. *See* 49 U.S.C. § 1154(b) (formerly codified at 49 U.S.C. § 1441(e)). Section 835.7 limits a former NTSB employee's testimony "to the matters delineated in § 835.3, and use of reports as prescribed by § 835.4." *Id.* § 835.7.

9

Only one other court appears to have addressed the permissible scope of a former NTSB employee's testimony. *See Loftleidir Icelandic Airlines, Inc. v. McDonnell Douglas Corp.*, 204 Cal. Rptr. 358 (Cal. App. 1984). In that case, a California court of appeals reversed the decision of a lower court to exclude the opinion testimony of a former NTSB employee who was not involved in the investigation of the subject accident. *Id.* at 364. The court concluded that the former NTSB employee should have been allowed to offer expert opinion testimony because his opinions and conclusions were not "formulated as a part of his official duties with the NTSB," *id.* at 362; he "had no investigative function whatsoever over the . . . accident," *id.* at 363; and "he was not personally involved in the field investigation of the crash," *id.* The *Loftleidir* court concluded that allowing the testimony under these circumstances would not interfere with what it conceived to be the primary purpose of 49 C.F.R. §§ 853.3 and 853.4: to prevent the NTSB's opinion regarding the probable cause of the accident from being used in litigation.

We find the *Loftleidir* court's reasoning persuasive and further note that allowing testimony under the circumstances at hand does not undermine any of the stated purposes of the regulations. *See* 49 C.F.R. § 835.1. There is no indication that Wandell had any connection whatsoever with the investigation of this accident during his tenure at the NTSB. He developed his expert opinions after his retirement from the NTSB from an independent review of sources other than the NTSB accident report.

10

That Wandell worked in the office that investigated the subject crash, without more, does not change our conclusion. *Cf.* *Loftleidir*, 204 Cal. Rptr. at 363 (noting that, although the expert was not involved in the investigation, he had reviewed and initialed the report and forwarded it to the Board).

Moreover, although, as appellants note, the party presenting the witness in the *Loftleidir* case had agreed not to mention the fact that he was a former NTSB employee, that Wandell was permitted to testify that he had worked for the NTSB does not persuade us that his testimony should have been disallowed. In this case, no mention was made of Wandell's connection to the investigating office, and he clearly testified that he was retired from the NTSB.[5]

## III.

The district court precluded appellants from introducing evidence through their expert witness on liability that the pilot had violated specific Federal Aviation Regulations (FARs) and also refused appellants' request to incorporate the FARs into the jury instructions.[6] "Recognizing that district courts enjoy substantial

---

[5] We note, however, that on retrial, Keystone would be well advised to avoid making a show of Wandell's NTSB lapel pin. Although the Campbells raised no contemporaneous objection to this display, we agree with the Campbells that such grandstanding has the potential to mislead the jury.

[6] Instead, the jury was instructed only that the pilot had a duty to act with ordinary care, and "ordinary care" was defined as "that degree of care that would be used by an airplane pilot under the same or similar circumstances."

11

latitude in formulating jury instructions, this court reviews the refusal to provide a requested instruction for abuse of discretion." *United States v. Trevino-Martinez*, 86 F.3d 65, 67 (5th Cir. 1996), *cert. denied*, ___ U.S. ___, 117 S. Ct. 1109 (1997) (citing *United States v. Smithson*, 49 F.3d 138, 142 (5th Cir. 1995)).

The district court based its ruling in part on the fact that appellants failed to plead negligence per se. Appellants do not argue on appeal that the alleged violations of the regulations constituted negligence per se or that they were entitled to a negligence per se instruction, but only that the violations of the regulations were some evidence of negligence. We agree. This court has recognized that FARs have the "force and effect of law," *United States v. Schultetus*, 277 F.2d 322, 327 (5th Cir. 1960), and other courts have held that their violation constitutes some evidence of negligence. *See, e.g.*, *In re Air Crash Disaster at John F. Kennedy Int'l Airport*, 635 F.2d 67, 75-76 (2d Cir. 1980); *Tilley v. United States*, 375 F.2d 678, 680 (4th Cir. 1967). Appellants do not explain, however, why the fact that the FARs are some evidence of negligence entitled them to a jury instruction including the regulations. Nor do they cite any authority that establishes that the refusal to give such an instruction constitutes an abuse of discretion.[7] Under these circumstances, we

---

[7]    Appellants rely on *In re Air Crash Disaster at John F. Kennedy Int'l Airport*, 635 F.2d at 75-76. In that case, the court of appeals upheld an instruction that the jury could consider the FARs to be some evidence of negligence. The instruction was challenged on appeal based on the insufficiency of the evidence to

12

conclude that the district court did not abuse its discretion in refusing to instruct the jury regarding the FARs.

We see no reason, however, that appellants on retrial should be precluded from presenting the FARs to the jury as evidence of what a reasonable pilot would have done under the circumstances. Even if a violation of a regulation does not constitute negligence per se, failure to comply with a regulation may still provide evidence that the defendant deviated from the applicable standard of care. *See, e.g.*, *Dougherty v. Santa Fe Marine, Inc.*, 698 F.2d 232, 235 (5th Cir. 1983)(noting that the jury could consider the regulations "as illustrative of a reasonable manufacturer's conduct"); *Marshall v. Isthmian Lines, Inc.*, 334 F.2d 131, 136 (5th Cir. 1964)(citation omitted)(holding that regulations are a "relevant fact" to be considered by the jury even if negligence per se does not apply)(quoting Prosser, Torts § 34, at 162 (2d ed. 1955)).[8]

---

show a violation of the regulations, the specific language of the instruction submitted, and an argument that the FARs were not "minimum standards of safety." *Id.* at 75, 75-76. Nothing in that case, however, indicates that the refusal to give such an instruction constitutes error.

[8]    Assuming without deciding that the Campbells' complaint was insufficient to put Keystone on notice that they were pursuing a negligence per se theory, their failure to cite the FARs in their complaint does not preclude them from presenting these regulations as some evidence consistent with their factual theory of negligence.

IV.

Appellants also appeal the district court's refusal to admit evidence of the suicide of Campbell's son, Thomas Moises Campbell, and evidence regarding the condition of Campbell's body after the crash.

## A.

A little more than a year after his father's death, Thomas Moises Campbell ("Thomas") committed suicide. In a suicide note, Thomas referred to his father's death and said that he was "going to visit him." Although the Campbells did not assert a cause of action on behalf of Thomas's estate, they did urge that evidence of his suicide should be admitted to show the degree of mental anguish that the other members of the family had suffered as a result of Campbell's death. Noting the potential for this evidence to inflame the jury and confuse the issues, the district court ruled that no mention could be made of the fact that Thomas had taken his own life.[9]

The risk that the jury would confuse the mental anguish suffered by family members as a result of young Thomas's suicide with that resulting from Campbell's death was substantial. *See* Fed. R. Evid. 403. By contrast, the probative value of this evidence to show the degree of mental anguish suffered by other family members as a result of Campbell's death was tenuous.

---

[9] The district court ruled before trial that Thomas's suicide note would not be admitted, citing Federal Rule of Evidence 403. On the first day of trial, the district court ruled that no mention could be made of Thomas's suicide whatsoever.

15

Moreover, the Campbells did not assert mental anguish on behalf of Thomas's estate. Under these circumstances, we conclude that the district court acted within its discretion under Rule 403 in refusing to admit evidence relating to Thomas's suicide.

B.

The district court also refused to admit evidence relating to the condition of Campbell's remains. Campbell was decapitated in the accident, and his body was badly burned. The Campbells specifically challenge the district court's exclusion of photographs of the crash site showing Campbell's remains, a coroner's report, which contained photographs of Campbell's remains, and the videotaped deposition testimony of George Franklin Hobbs, an undersheriff in the Lander County Sheriff's Department, who reviewed photographs showing the condition of the bodies found at the crash site. The Campbells argue that this evidence was relevant to show the extent of the mental anguish suffered by members of Campbell's family. Mrs. Campbell and Marisol Campbell, Campbell's oldest daughter, apparently saw photographs of the crash site and Campbell's remains.

Keystone argues that because there was no dispute as to the manner of Campbell's death and the Campbells did not pursue a claim for conscious pain and suffering on behalf of Campbell's estate, the excluded evidence had no probative value and was therefore inadmissible under Federal Rule of Evidence 402. We disagree. Evidence is relevant if it has "any tendency to make the existence

16

of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. We have little doubt that the knowledge that their husband and father was decapitated and badly burned in the accident added to the Campbells' mental anguish.

Keystone argues that, even if this evidence was relevant, the district court properly refused to admit it under Rule 403 because its probative value was substantially outweighed by its unduly prejudicial nature and its tendency to inflame the jury. "Because Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used sparingly." *United States v. Morris*, 79 F.3d 409, 411 (5th Cir. 1996) (citing *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993); *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979)). Nevertheless, "[a] district court has broad discretion in assessing admissibility under Rule 403," and we review only for an abuse of that discretion. *Id.* (citation omitted).

We turn first to the district court's exclusion of photographs of Campbell's remains. The Advisory Committee's Note to Rule 403 specifically notes the risk that proffered evidence will "induc[e] a decision on a purely emotional basis" as a circumstance that may require the exclusion of relevant evidence under Rule 403. Fed. R. Evid. 403 advisory committee's note. This circuit has explained that "[p]hotographs of the victim bleeding profusely are classic examples of such evidence." *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1085 (5th Cir. 1986); *see also Gomez v. Ahitow*,

17

29 F.3d 1128, 1139 (7th Cir. 1994) (holding that the district court erred in admitting "gruesome" photographs of victim's body); *Ferrier v. Duckworth*, 902 F.2d 545 (7th Cir. 1990) (holding that the district court erred in admitting enlarged photographs of a pool of the victim's blood).  The balance does not always weigh against the admission of such evidence, however, as evidenced by numerous decisions in this circuit upholding the district court's decision to admit such evidence.  *See In re Air Crash Disaster Near New Orleans*, 767 F.2d 1151 (5th Cir. 1985) (holding that the district court did not abuse its discretion in admitting photographs of the bodies of plane crash victims with third degree burns where conscious pain and suffering was an issue); *United States v. Bowers*, 660 F.2d 527, 529-30 (5th Cir. 1981) (holding that the prejudice inherent in color photographs of a child's lacerated heart in a criminal prosecution for the child's death did not substantially outweigh the probative value of the evidence to show cruel and excessive physical force); *United States v. Kaiser*, 545 F.2d 467, 476 (5th Cir. 1977) (holding that admission of photographs of murder scene was not an abuse of discretion).

In this case, the photographs that the Campbells sought to introduce created some risk that the jury's decision would be based on a visceral response to the images presented.  Although the evidence had some probative value, it was within the district court's discretion to exclude the evidence after weighing that probative value against the risks of presenting these photographs to the jury.  Accordingly, we find that the district court did not

18

abuse its discretion in excluding the photographic evidence of Campbell's remains.

To the extent that the district court's ruling precluded any testimony regarding the condition of Campbell's remains, however, that ruling was an abuse of discretion.[10]  As discussed above, the facts that Campbell was decapitated and his body burned were probative of the mental anguish suffered by members of his family. Moreover, any prejudice from the testimony regarding the bare facts of the condition of his body would not give rise to "undue" prejudice under Rule 403.  Likewise, testimony alone would not have the same potential to inflame the jury that the photographic depictions of Campbell's remains might have.

V.

The district court held the Campbells' counsel, Daniel J. Petroski, Jr., in criminal contempt for violating a pretrial order of the court granting Keystone's motion in limine to preclude the introduction of evidence of Keystone's financial status during the liability and compensatory damages portion of the trial.  The court sentenced Petroski under the criminal contempt statute, 18 U.S.C.

---

[10]     Although both parties brief this issue as though the district court ruled that no evidence of the condition of Campbell's body could be introduced, the district court acknowledged at various junctures that the fact of Campbell's decapitation, as distinguished from the photographs, could be presented to the jury. At one point, the district court indicated that it would allow Mrs. Campbell to testify that "she knows that [her husband] was decapitated and that plays on her mind."  Appellants apparently chose not to pursue this line of testimony, but are not precluded from attempting to do so on remand.

§ 401, to a twenty-four hours imprisonment, which he served after the jury was dismissed. A divided panel of this court reversed the district court's judgment of criminal contempt against Petroski on the ground that the evidence failed to establish beyond a reasonable doubt that the order violated was sufficiently specific. *See United States v. Daniel J. Petroski, Jr.*, No. 96-20933, slip op. at 1 (5th Cir. Nov. 19, 1997).

After trial, Keystone filed a motion for sanctions, seeking compensation for the delay and expense that resulted from Petroski's persistence in disregarding various district court orders. The motion emphasized that Petroski had repeatedly disregarded the court's order not to pursue a line of questioning regarding the difference between Keystone and two related companies and ignored numerous subsequent admonishments at the bench to refrain from this line of questioning. The district court granted Keystone's motion and ordered Petroski and his law firm to pay Keystone $15,470.20 for Keystone's reasonable costs, expenses, and attorney's fees incurred as a result of Petroski's violation of the court's order.

On appeal, Petroski argues that the post-trial monetary award, in addition to the imprisonment already imposed, violated 18 U.S.C. § 401, which allows the district court to impose either a fine or imprisonment for criminal contempt of its authority, but not both. 18 U.S.C. § 401;[11] *Green v. United States*, 356 U.S. 165, 78 S. Ct.

---

[11]     Section 401 gives the district court authority "to punish by fine *or* imprisonment, at its discretion . . . contempt of its authority . . . ." 18 U.S.C. § 401 (emphasis added). By contrast,

20

632, 642 (1958); *In re Bradley*, 318 U.S. 50, 63 S. Ct. 470, 470 (1943); *United States v. Holmes*, 822 F.2d 481, 486 (5th Cir. 1987); *United States v. Hilburn*, 625 F.2d 1177, 1181 & n.4 (5th Cir. 1980). The district court, however, did not award Keystone attorney's fees and costs under 18 U.S.C. § 401. Rather, the award was made in response to a motion for sanctions brought under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 16(f).[12] That we have characterized an award under 28 U.S.C. § 1927 as "penal," *FDIC v. Conner*, 20 F.3d 1376, 1384 (5th Cir. 1994); *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991), does not transform every award under that section into a fine under 18 U.S.C. § 401.[13] Accordingly, we affirm the district court's order granting Keystone's motion for sanctions.

VI.

---

a court may punish civil contempt by both a fine and imprisonment. *See In re Dinnan*, 625 F.2d 1146, 1150 (5th Cir. 1980) (citation omitted).

[12] Appellants correctly note that we have required district courts to make detailed findings when making an award under 28 U.S.C. § 1927. *FDIC v. Conner*, 20 F.3d 1376 (5th Cir. 1994); *Browning v. Kramer*, 931 F.2d 340 (5th Cir. 1991). To the extent that appellants argue that the district court's order should be vacated for lack of such findings, they abandoned this issue by failing to raise it in their initial brief. *Stephens v. C.I.T. Group/Equip. Fin., Inc.*, 955 F.2d 1023, 1026 (5th Cir. 1992) (issues cannot be raised for the first time in reply briefs).

[13] Appellants do not argue that the sanctions posed a double jeopardy problem, only that the sanctions violated 18 U.S.C. § 401. For the Supreme Court's most recent pronouncement on the circumstances in which a monetary penalty constitutes a criminal punishment for double jeopardy purposes, see *Hudson v. United States*, ___ U.S. ___, 118 S. Ct. 488 (1997).

Keystone argued in the court below that Campbell was its employee, and thus he was entitled to recover only under worker's compensation. Appellants maintained that Campbell was an independent contractor. At the close of appellants' evidence, Keystone moved for judgment as a matter of law on this issue. The district court denied the motion and submitted the issue to the jury, which found that Campbell was an independent contractor. Keystone cross-appeals the district court's denial of its post-verdict motion for judgment as a matter of law on this issue.

Because Keystone failed to renew its motion for judgment as a matter of law at the close of all evidence, we review for plain error. *See Polanco v. City of Austin*, 78 F.3d 968, 974 (5th Cir. 1996). In reviewing for plain error, we determine "not whether there was substantial evidence to support the jury verdict, but whether there was any evidence to support the jury verdict." *Purcell v. Seguin State Bank & Trust Co.*, 999 F.2d 950, 957 (5th Cir. 1993).

Under Texas law, whether a person is an employee or an independent contractor is a question of fact, *Halliburton v. Texas Indem. Ins. Co.*, 213 S.W.2d 677 (Tex. 1948), unless there is no dispute as to the controlling facts and only one reasonable conclusion can be drawn from those facts, *Industrial Indem. Exchange v. Southard*, 160 S.W.2d 905, 906 (Tex. 1942); *Wackenhut Corp. v. Perez*, 865 S.W.2d 86 (Tex. App.—Corpus Christi 1993, writ denied) (citing *Southard*).

The central inquiry on this issue is whether Keystone had "the right to control the progress, details, and methods of operations of [the claimant's] work." *Thompson v. Travelers Indem. Co.*, 789 S.W.2d 277, 278 (Tex. 1990)(citing *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex. 1964)). A number of factors are relevant to this determination, including "the method of payment, whether by the time or by the job." *Pitchfork Land & Cattle Co. v. King*, 346 S.W.2d 598, 603 (Tex. 1961); *Southard*, 160 S.W.2d at 906.

The Campbells presented evidence that Keystone paid Campbell a $10,000 lump sum for his first two months of work and that Keystone recorded this payment in its subcontractor general file rather than in its employment records. The manner in which Campbell was paid was in contrast with Keystone's practice of paying all its other employees on an hourly basis. Contrary to Keystone's assertion, that this advance payment was made at Campbell's insistence does not necessarily militate against concluding that the lump-sum payment supports the jury's independent contractor finding.

Further, Gil Mallinckrodt, the president of Keystone, testified that he did not give Campbell instructions regarding the day-to-day performance of his duties, other than determining when survey flights would take place. Mallinckrodt also agreed that when Campbell was not flying, there "were no controls on whatever hours or whatever it was he was doing over there out in the field." Mallinckrodt's testimony and the lump sum nature of Campbell's

23

compensation provide some evidence to support the jury's verdict. Under the plain error standard, no more is required.[14]

## VII.

Accordingly, we VACATE the judgment of the district court and REMAND for a new trial on liability and damages.[15]  We AFFIRM the district court's order granting Keystone's motion for sanctions.

---

[14]     The Campbells also complain that the district court erred by disregarding the separate corporate existences of Keystone and its subsidiaries, Precision and Airmag, which were dismissed prior to trial, and that this error influenced the jury's failure to find that the pilot was negligent.  The Campbells sought to introduce evidence that these were different corporate entities in connection with their claim that Campbell was not Keystone's employee.  The district court ruled that the Campbells were not entitled to explore the differences between the companies because they had pleaded only that Campbell was an independent contractor not that he was an employee of the other companies.  The district court further orally instructed the jury that they could consider the companies to be interchangeable, but that "legally they are not interchangeable."  We note that, under Texas law, the separate corporate existence of an entity is generally respected unless evidence is adduced to justify its disregard.  *See Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984).  Assuming without deciding that the district court erroneously refused to permit the Campbells to present evidence of the separate corporate existences of Keystone, Airmag, and Precision, the only point on which the district court's ruling created a risk of confusion was the employee/independent contractor issue, a point on which the Campbells prevailed.  We fail to see how the disregard of the corporate distinctions among Keystone, Airmag, and Precision could have influenced the jury's failure to find that the pilot was negligent.

[15]     Because the jury's finding that Campbell was an independent contractor was separate from and unaffected by Wandell's testimony, this issue need not be retried.  *See Maxey v. Freightliner Corp.*, 727 F.2d 350 (5th Cir. 1984)(citations omitted); Wright et al., Federal Practice and Procedure, Civil § 2814, at 150 (2d ed. 1995)("It therefore now may be regarded as settled that if an error at trial requires a new trial on one issue, but this issue is separate from the other issues in the case and the error did not affect the determination of the other issues, the scope of a new trial may be limited to the single issue.").