[No. H011481. Sixth Dist. Nov. 21, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL RICHARD CASTRO, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts B, C, D, E, G, H and I.

**COUNSEL**

J. Frank McCabe, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Mark S. Howell and Peggy S. Ruffra, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MIHARA, J.**—Defendant was convicted of six counts of lewd conduct on a child (Pen. Code, § 288, subd. (a)), and an allegation that he had committed a prior serious felony (Pen. Code, § 667, subd. (a)) was found true. He was committed to state prison for 23 years. On appeal, he contends that (1) the trial court prejudicially erred in excluding testimony of a psychotherapist that the victim was lying, (2) the trial court prejudicially erred in admitting evidence of defendant's prior molestation of the same victim, (3) the

prosecutor committed misconduct, (4) the trial court prejudicially erred in excluding evidence that the victim had also accused another man of molesting her, (5) the trial court prejudicially erred in admitting hearsay evidence, (6) the trial court's instruction to the jury defining the crime was prejudicially erroneous, (7) defendant's trial counsel was ineffective, and (8) the trial court prejudicially erred in imposing an aggravated term. For the reasons expressed below, we affirm the judgment.

## FACTS

Sarah S. lived with her sister Sylvia, her mother Corrine, and defendant in a house in Sunnyvale. Corrine and defendant had originally planned to be married in July 1990. However, in April 1990, when Sarah was nine years old, defendant molested her. He was prosecuted, pleaded no contest and was convicted and granted probation. In May 1991, Corrine and defendant became engaged to be married in late July 1992. On a Friday night in early July 1992, Sarah told her best friend Nicole that defendant had "touched her in her 'private.'" Sarah was upset, crying and shaking. Defendant married Corrine on July 25, 1992. Around August 10, 1992, Sarah told Corrine that defendant "was doing that to me again." Sarah explained that defendant's lewd acts had occurred "about one to two weeks before the wedding."

There were five occasions of lewd conduct, one of which involved multiple charged offenses. One incident occurred after Sarah and Sylvia had played Monopoly with defendant. Defendant suggested the loser be on the bottom of a "dog pile." Since Sylvia was the loser, Sylvia was on bottom with Sarah lying on top of her and defendant on top of Sarah. Defendant pushed Sarah's shorts and underwear aside and "was rubbing his face on my behind." This lasted for 10 to 15 minutes before Sarah got defendant to stop by telling him that Sylvia could not breathe. A second incident occurred when Sarah, Sylvia and defendant were watching television. Sarah and defendant were lying on the couch covered by a blanket. Defendant moved Sarah's clothing aside and rubbed her behind, her vagina and her breasts. On a third occasion, Sarah and Sylvia were sleeping on the living room floor when defendant woke Sarah up and said "Come sleep by me." Then, defendant began rubbing Sarah's behind. On a fourth occasion, defendant approached Sarah when she was in the living room, knelt beside her, took her hand and placed it on his penis. He moved her hand up and down and moaned.

On a fifth occasion, Sarah was sleeping in her bedroom at night when she was awakened by defendant licking her vagina. Sarah pretended to be asleep. After awhile, defendant got up and went into the bathroom next to Sarah's

bedroom. About 10 to 15 minutes later, defendant returned to Sarah's bedroom and began licking her vagina again. Sarah turned over to let defendant know that she was awake. He immediately got up and went back to the bathroom. After another 10 to 15 minutes, defendant returned and licked Sarah's vagina a third time. Defendant continued to leave and return until eventually Sarah got up, went into Sylvia's room and went to sleep on the floor.

On numerous other occasions, defendant exposed his penis to Sarah. Sarah did not tell her mother about these incidents because she was scared "that my mom would not believe me and get angry" and "[b]ecause my mom was really happy with him [defendant]." Sarah was also reluctant to reveal the molestations because, after she reported defendant's 1990 molestation of her, she and her sister were removed from her mother's custody. She did not want to be removed from her mother's custody again. Sarah understood that if she reported these molestations she would break up her family, and she did not want that to happen. However, Sarah told her friend Isaac about the molestations, and he convinced her that she had to tell her mother. Corrine did not believe Sarah's allegations. Sarah thereafter reported the molestations to their family therapist and to a social worker.

Defendant was charged by information with six counts of lewd conduct on a child (Pen. Code, § 288, subd. (a)), and it was further alleged that he had suffered a prior serious felony conviction (Pen. Code, §§ 667, 1192.7). Defendant was convicted and sentenced to state prison for a total term of 23 years. He filed a timely notice of appeal.

## Discussion

### A. *Restriction on Therapist's Testimony*

Constance Chrysoglou is a licensed marriage and family therapist who was counseling Sarah, Corrine and defendant as their family therapist at the time of the offenses and their disclosure. The prosecution sought an *in limine* ruling excluding "all those statements by the counselor, any statements made or any opinion rendered by her as to the believability of a witness." Defendant's trial counsel argued that it was "premature to deal with these evidentiary points" *in limine*. After noting that the defense could use any inconsistent statements to Chrysoglou by Sarah to impeach Sarah's testimony, the trial court declined to rule further *in limine*. Defendant subsequently called Chrysoglou as a defense witness and attempted to qualify her as "an expert in the area of psychological diagnosis and counseling." The

trial court refused to qualify her as an expert.[1] The defense was thereafter precluded from eliciting from Chrysoglou her opinion about the truth of Sarah's claim that defendant had molested her. The defense was limited to asking Chrysoglou "about specific items that Sarah may have said that might be in conflict in any way with [her] testimony . . . ."

In an offer of proof outside the presence of the jury[2], defense counsel asserted that Chrysoglou should be permitted to testify to "opinions which explain Sarah's allegations in a way to show that they are not based upon the truth." "[T]he victim is psychologically angry at her mother. And that that anger and that emotional state, in Ms. Chrysoglou's view, explains the allegations, that it relates to the victim's anger with her mother . . . [¶] . . . And that all of these factors combine to produce . . . a psychological recreation of the molest that comes from the psychological state of Sarah S[.], and not from a true state of affairs." "[The] allegations are the projection of Sarah's own severe emotional problems. [¶] . . . I want to put the information before the jury that Sarah's allegations are the projection of, or the result of Sarah's own severe emotional problems, according to Ms. Chrysoglou."

■ Defendant now claims that the trial court "misapplied the psychotherapist-patient privilege and erred in refusing to allow the defense to elicit this highly significant testimony from the family's therapist." He claims that he had a constitutional right to present this evidence which outweighed Sarah's right to privacy and hence overcame the psychotherapist-patient privilege. We disagree. The only potential basis for admission of *any* psychiatric evidence regarding Sarah was extremely tenuous. ■ A rule applicable only to "cases involving sex violations" permits a trial court, in its discretion, to allow "the admission of psychiatric evidence as to the mental and emotional condition of a complaining witness for the purpose of impeaching her credibility . . . ." (*People* v. *Russel* (1968) 69 Cal.2d 187, 193

---

[1]Subsequently, outside the presence of the jury, the trial court made a statement of its reasons for refusing to qualify Chrysoglou as an expert. "I precluded you from eliciting this opinion because you could not, in my view, lay a proper foundation without disclosure of what Sarah told her . . . I have indicated to both of you that you are precluded from eliciting such information because of the privilege. [¶] I did say, however, that you could use any statements that Sarah made to this counselor for impeachment purposes. But only, it must be limited to impeachable statements and not open ended statements which would allow this witness perhaps to either unwittingly or unknowingly disclose a privilege that we had indicated existed here. So the motion to qualify this witness as an expert in that area was denied for those reasons, and the reasons are now stated on the record."

[2]The trial court gave defense counsel a more than adequate opportunity to make a record. "THE COURT: This [is] an opportunity to make a record, Mr. Blackman [defense counsel] . . . . I'm giving you this opportunity to make a record for whatever reasons you'd like to indicate as to why you feel the Court's rulings perhaps have been too limiting in your situation."

[70 Cal.Rptr. 210, 443 P.2d 794]; *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 174-175 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416].) "[E]xpert opinion is admitted in this area in order to inform the jury of the effect of a certain medical condition upon the *ability* of the witness to tell the truth—*not* in order to decide for the jury whether the witness *was or was not telling the truth on a particular occasion*." (*People* v. *Russel, supra*, 69 Cal.2d at p. 196, italics added.) "[T]he psychiatrist may *not* testify to the ultimate question of whether the witness is telling the truth on a particular occasion." (*People* v. *Ainsworth* (1988) 45 Cal.3d 984, 1012 [248 Cal.Rptr. 568, 755 P.2d 1017], italics added.)

 While, under the rule expressed in *Russel*, the trial court could have, in its discretion, admitted evidence of Sarah's mental or emotional condition for the purpose of assessing her *ability* to tell the truth, the trial court was not authorized by this rule to admit Chrysoglou's proposed testimony that Sarah's specific claim that defendant had molested her was false. Because defendant's offer of proof was narrowly directed at the truth of Sarah's molestation allegation, the trial court had *no* discretion to admit the proffered evidence. Even if the trial court was expected to be omniscient and deduce that defendant was seeking admission of the type of evidence permitted by *Russel*, the court did not err in concluding that the psychotherapist-patient privilege was paramount in this case and required exclusion of the evidence.

"[T]he patient . . . has a privilege to refuse to disclose, and to prevent another from disclosing a confidential communication between patient and psychotherapist . . . ." (Evid. Code, § 1014.) " '[C]onfidential communication between patient and psychotherapist' means information, including information obtained by an examination of the patient, transmitted between a patient and his psychotherapist in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation, or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the psychotherapist is consulted, and includes a diagnosis made and the advice given by the psychotherapist in the course of that relationship." (Evid. Code, § 1012.) "There is no privilege [however] under this article if . . . [t]he patient is a child under the age of 16 [and] . . . [t]he psychotherapist has reasonable cause to believe that the patient has been the victim of a crime and that disclosure of the communication is in the best interest of the child." (Evid. Code, § 1027.)

 For policy reasons, the psychotherapist-patient privilege is broadly construed in favor of the patient and exceptions to the privilege are narrowly

construed. (*People* v. *Stritzinger* (1983) 34 Cal.3d 505, 511, 513 [194 Cal.Rptr. 431, 668 P.2d 738].) Though the psychotherapist-patient privilege is part of the patient's constitutional right to privacy, it is not absolute and "may yield in the furtherance of compelling state interests." (*Id.* at p. 511.)

 Chrysoglou's proposed testimony clearly would have delved into privileged information. Chrysoglou's opinion that Sarah suffered from "severe emotional problems" was a "diagnosis" within the meaning of Evidence Code section 1012 and therefore subject to the privilege. The exception provided by Evidence Code section 1027 does not apply here because defendant's offer of proof reflected that Chrysoglou did not believe that Sarah had been the victim of a crime. Given the narrow construction that we must attribute to this exception, it cannot be extended to situations where the psychotherapist believes that no crime has occurred.

The *Russel* rule does nothing to overcome the psychotherapist-patient privilege. At the time of *Russel*, there was another rule that permitted the court to order a psychiatric examination of a sexual assault victim. (*People* v. *Francis* (1970) 5 Cal.App.3d 414, 419 [85 Cal.Rptr. 61].) The Legislature subsequently enacted a statute nullifying that rule. (Stats. 1980, ch. 16, § 1, p. 63; Pen. Code, § 1112.) Even without consideration of the privilege, *Russel* itself contemplated that evidence of a sexual assault victim's mental condition would be admissible only in the discretion of the trial court. *Russel* directed the trial court to consider that "[a] psychiatrist's testimony on the credibility of a witness may involve many dangers: the psychiatrist's testimony may not be relevant; the techniques used and theories advanced may not be generally accepted; the psychiatrist may not be in any better position to evaluate credibility than the juror; difficulties may arise in communication between the psychiatrist and the jury; too much reliance may be placed upon the testimony of the psychiatrist; partisan psychiatrists may cloud rather than clarify issues; the testimony may be distracting, time-consuming and costly." (*People* v. *Russel*, *supra*, 69 Cal.2d at p. 195, fn. 10.)

When the considerations set forth in *Russel* are viewed against the backdrop of the psychotherapist-patient privilege, it is clear that the trial court did not err in excluding the proffered evidence. Most critically, Chrysoglou was not "in any better position to evaluate [Sarah's] credibility than the juror[s]." (*People* v. *Russel*, *supra*, 69 Cal.2d at p. 195, fn. 10.) Sarah testified at trial that she lied to Corrine "a lot" and that they had frequent arguments around the time of Corrine's marriage to defendant. Sarah admitted that she strongly opposed Corrine's marriage to defendant. Corrine testified that she believed that Sarah had falsely accused defendant in order to hurt her. Sarah denied this. However, Sarah admitted that she had told Corrine of the molestations during a very emotional argument between them

about her lying. Yet, Corrine described Sarah as "[v]ery calm" when she told Corrine of the molestations. Since evidence of Sarah's emotional state was before the jury, and Chrysoglou's testimony would have been substantially cumulative, it is apparent that this evidence was not of such importance or value that it could outweigh the psychotherapist-patient privilege. The trial court did not err.

B.-E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

F. *Lewd or Lascivious Act Requirement*

Defendant asserts that the trial court erroneously instructed the jury on the elements of the offenses. The trial court instructed the jury as follows. "Every person who willfully and lewdly commits any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the specific intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, is guilty of the crime of committing a lewd or lascivious act upon the body of a child, in violation of Penal Code Section 288(a) of the Penal Code. [¶] *A lewd or lascivious act is defined as any touching of the body or a person under the age of 14 years with the specific intent to arouse, appeal to, or gratify the sexual desires of either party.*" (Italics added.) ▮ Relying on *People* v. *Wallace* (1992) 11 Cal.App.4th 568 [14 Cal.Rptr.2d 67], defendant claims that the italicized portion of this instruction (CALJIC No. 10.41) erroneously defined "lewd or lascivious act." The Fifth District Court of Appeal held in *Wallace* that "the CALJIC definition of a lewd or lascivious act is erroneous." (11 Cal.App.4th at p. 579.) The First District subsequently adopted the reasoning of *Wallace* in *People* v. *Self* (1993) 12 Cal.App.4th 1222 [16 Cal.Rptr.2d 67] and *People* v. *Gaglione* (1994) 26 Cal.App.4th 1291 [32 Cal.Rptr.2d 169].

We agree with *Wallace* and *Self* that the CALJIC definition of "lewd or lascivious act" was erroneous. We need go no further than Penal Code section 288, subdivision (a) itself to reach this conclusion. "Any person who shall willfully and lewdly commit any *lewd or lascivious act* . . . upon or with the body, or any part or member thereof, of a child under the age of 14 years, *with the intent* of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of the child, shall be guilty of a felony . . . ." (Pen. Code, § 288, subd. (a), italics added.) As *Wallace* explained, Penal Code section 288, subdivision (a) defines an offense which

---

*See footnote, *ante*, page 390.

requires not only that the perpetrator harbor the requisite lewd intent but also that the perpetrator "commit any lewd or lascivious *act*." (Pen. Code, § 288, subd. (a), italics added.) By telling the jury that a "lewd or lascivious act" was "any touching" accompanied by a lewd intent, the challenged portion of the instruction eliminated the statute's requirement that the act itself be "lewd or lascivious." "Section 288 mandates the commission of a lewd or lascivious act upon or with the body of the victim, separate and apart from the intent of the perpetrator. If this were not the law a defendant could be convicted for his or her thoughts, regardless of his or her deeds." (*People* v. *Wallace, supra,* 11 Cal.App.4th at pp. 578-579.)

An instructional error of this kind is reviewed under the "harmless error" analysis set forth in *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]. (*People* v. *Odle* (1988) 45 Cal.3d 386, 414-415 [247 Cal.Rptr. 137, 754 P.2d 184]; *People* v. *Wallace, supra,* 11 Cal.App.4th at p. 580.) "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman* v. *California, supra,* 386 U.S. at p. 24 [17 L.Ed.2d at pp. 710-711].) In other words, the error merits reversal unless there is no reasonable possibility that the error contributed to the result. (*Ibid.*) In this case, the question is whether it is reasonably possible that the jury would have concluded that defendant's acts were not lewd or lascivious if it had not been instructed that "any touching" constituted a lewd or lascivious act.

Defendant does not seriously contend that there is any possibility that the jury would have concluded that the four acts involving genital contact were not lewd or lascivious in the absence of the erroneous instruction. As to the four counts (counts II, IV, V and VI) based on these acts, the instructional error was harmless beyond a reasonable doubt. The instructional error was also harmless with respect to the two counts which did not involve genital contact. One of these counts (count I) was the "dog pile" incident when defendant lay on top of Sarah, pushed her shorts and underwear aside and rubbed his face on her bottom. Although this offense did not involve genital contact, the act was so clearly sexual in nature that there is no reasonable possibility that the jury's conclusion that this act was "lewd or lascivious" was influenced by the erroneous "any touching" instruction. No reasonable juror could have entertained a doubt that this act was lewd.

The remaining offense (count III) occurred when Sarah and Sylvia were sleeping on the living room floor. Defendant awakened Sarah by saying "Come sleep by me." Sarah was sleeping under a blanket on her side with her back towards defendant. Defendant placed his hand on Sarah's behind

"skin to skin" and rubbed her behind. An adult male who awakens an 11-year-old girl in the night and places his hand underneath her blanket to rub her behind "skin to skin" commits a lewd or lascivious act. Under the circumstances of this case, we are convinced beyond a reasonable doubt that the jury's decision that this was a lewd act was not influenced by the erroneous "any touching" instruction. Thus, the error was harmless.[4]

Although we conclude that the trial court's utilization of this erroneous instruction did not prejudice defendant, we are not satisfied with the instruction proposed by Wallace as a replacement for the erroneous instruction. *Wallace* explained that "[t]he words "a lewd or lascivious act" should be given their plain meaning" and offered a definition of "lewd or lascivious act." "A lewd or lascivious act is defined as any touching of the body of a child which to an *objectively reasonable person* is sexually indecent or tends to arouse sexual desire. (See Webster's New Internat. Dict. (3d ed. 1986) pp. 1274, 1301.) In sum, it is a sexual act." (11 Cal.App.4th at p. 579, italics in original.) In 1993, CALJIC was revised to include the first sentence of the *Wallace* court's "definition" as an alternative to the erroneous language disapproved of by *Wallace*.[5] The CALJIC Use Note says that "[t]he trial court will have to make a choice as to which definition is appropriate."

The solutions offered by *Wallace* and adopted by CALJIC do not fully resolve this issue. The CALJIC Use Note presents a serious problem. Trial courts should not have to make a choice between giving the pre-*Wallace* instruction, and thereby committing federal constitutional error, or giving the *Wallace* instruction. The pre-*Wallace* definition of "lewd or lascivious act" should *never* be utilized in jury instructions on Penal Code section 288 offenses. While we agree with *Wallace* that "lewd or lascivious act" should be given its "plain meaning," and that both "lewd" and "lascivious" describe an act which is "sexually indecent or tends to arouse sexual desire," we are

---

[4]Defendant also challenges the sufficiency of the evidence to support the jury's implicit finding that the acts charged in counts I and III were "lewd or lascivious acts." Because we here conclude that, on this record, no reasonable jury could possibly have concluded other than that these acts were lewd or lascivious ones, it follows that there was substantial evidence that the acts charged in counts I and III were lewd or lascivious acts. We reject defendant's challenge to the sufficiency of the evidence.

[5]Neither CALJIC nor subsequent cases have picked up on the *Wallace* court's suggestion that a lewd or lascivious act "is a sexual act." Although we understand that *Wallace* probably meant "sexual act" to mean an act which is of a sexual nature, if this term were included in the instruction a reasonable juror might understand this term to be equivalent to "sex act." "Sex act" means sexual intercourse. (Webster's New Internat. Dict., *supra*, p. 2081.) To avoid the extremely limiting and incorrect meaning that a jury might attribute to the term "sexual act," the term "sexual act" should not be part of the instruction on the definition of "lewd or lascivious act." As noted, CALJIC did not incorporate that term into its alternative instruction based on *Wallace*.

troubled by the introduction of "an objectively reasonable person" into the instruction. *Wallace* explains that whether an act is lewd or lascivious must be judged against an "objective standard." We agree in principle that this is true, but we fail to see how the instruction is improved by its reference to "an objectively reasonable person." The jury may encounter difficulty in applying this "objectively reasonable person" language to the facts of a child molestation case. Even the most reasonable juror might ask: "Who is this objectively reasonable person?" Moreover, the instruction sets forth an objective standard even in the absence of this "objectively reasonable person" language. For these reasons, we offer the following definition of "lewd or lascivious act": *A lewd or lascivious act is defined as any touching of the body of a child which is sexually indecent or tends to arouse sexual desire.* This definition of "lewd or lascivious act" eliminates the error identified by *Wallace* without adding any superfluous language which could confuse jurors.

G.-I.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

CONCLUSION

The judgment is affirmed.

Cottle, P. J., and Wunderlich, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 22, 1995. Mosk, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 390.