[No. A065936. First Dist., Div. One. May 30, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH LEVESQUE, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

534

**COUNSEL**

Robert J. Beles and Paul McCarthy for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General,

Ronald E. Niver and Clifford K. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STEIN, J.**—Joseph Levesque appeals his convictions of violating Penal Code section 288, subdivision (a),[1] (count one) and section 647.6 (count two). The court also found true allegations of a prior section 288, subdivision (a) conviction and prior felony convictions for rape and burglary. Pursuant to section 667.51, subdivision (d) the court sentenced appellant to imprisonment for 15 years to life for the section 288, subdivision (a) violation, and a consecutive term of 16 months (one third the middle term) for the section 647.6 violation.

### FACTS

In August of 1992, appellant went on a picnic with J.J., age 12, Rosalia, age 9, their mother and their stepfather. Kerlett, age 7, and her parents also joined them. The four parents eventually left the children with appellant.

Appellant drove the children to an ice cream parlor. While they were there, Kerlett looked underneath the table and saw that appellant's penis was exposed underneath his shorts. She told Rosalia who also looked and saw it. J.J. noticed it as well.

Appellant then took the children to a pet store where he bought goldfish for J.J. After the pet store, appellant took the children to his home. Appellant telephoned Kerlett's mother, telling her that the kids would be home in half an hour.

At first all three of the children went to the weight room. J.J. began using the weights. Appellant left the room, and the two girls followed soon thereafter. Rosalia testified that appellant turned on a "nasty movie" and said, "Look." Kerlett did not remember the video. When J.J. joined them in the living room a few seconds later he saw that a Playboy movie was being played on the video cassette recorder (VCR). He tried to turn it off. He told Rosalia and Kerlett to go outside because he didn't think they should watch the movie, and announced that they were all going to leave. J.J. pulled Rosalia outside and got into appellant's car. Kerlett soon followed. Appellant did not come out. Kerlett persuaded J.J. and Rosalia to return to the house so that they could play with appellant's video camera.

---

[1]Unless otherwise specified, further statutory references are to the Penal Code.

While J.J. was taking his turn with the video camera, appellant called to get J.J.'s attention. When J.J. turned the camera towards appellant he saw that appellant had pulled down his pants and underwear and was displaying his bare buttocks. J.J. described it as "mooning." A few seconds later appellant called for J.J.'s attention again. This time appellant had Kerlett over his knees, and her pants were down displaying her bare buttocks. Rosalia saw appellant place Kerlett over his knees and pull down Kerlett's pants. Kerlett also testified that appellant "grabbed me and put me over his legs and took down my pants." When J.J. saw this he put down the camera, and told both girls to come with him. Kerlett jumped up and pulled her pants up, and they went outside. J.J. said to appellant "take us home or we're going to walk." On the way home in the car appellant warned the children not to say anything to their parents or they wouldn't be allowed to visit again.

Appellant's defense was that he was simply indulging in the playful stunt of "mooning" the camera. Hilda Gilgannon, a family friend of appellant's testified that after appellant was arrested she received a telephone call from Kerlett's father. He suggested that a donation of money or property might solve appellant's problem. Gilgannon understood these comments as a suggestion that the charges might be dropped in exchange for money or property. She told him: "This is bribery and I don't go for that." Cheryl Gilbertson, who works for Gilgannon, was present when Gilgannon received this call and listened in on the conversation. She confirmed that he asked for money or a donation.

Isabella Parsons, appellant's sister, testified that she had been staying with appellant, and that she had left an adult videotape in the VCR.

ANALYSIS

I.

*Definition of a Lewd Act*

Appellant first contends that the trial court gave erroneous instructions on the definition of a lewd act. Prior to 1993, CALJIC No. 10.41 defined a lewd act as "any touching of the body of a person under the age of fourteen years with the specific intent to arouse, appeal to, or gratify the sexual desires of either party." This definition was based on a long line of cases holding that "any touching" of the child's body may constitute a lewd act within the meaning of section 288, subdivision (a), if it is done with lewd intent. (See, e.g., *People* v. *Gilbert* (1992) 5 Cal.App.4th 1372, 1380 [7

Cal.Rptr.2d 660]; *People* v. *Pitts* (1990) 223 Cal.App.3d 606, 889 [273 Cal.Rptr. 757]; *People* v. *Dontanville* (1970) 10 Cal.App.3d 783, 795-796 [89 Cal.Rptr. 172].)

In *People* v. *Wallace* (1992) 11 Cal.App.4th 568 [14 Cal.Rptr.2d 67], the court held this definition of a lewd act is erroneous. The *Wallace* court opined that if a lewd act is defined as "any touching" with the requisite intent, a defendant could be convicted based on a "touching" which, *viewed independently from the defendant's intent*, appears totally innocuous. The court concluded that the touching itself must be lewd, otherwise a defendant "could be convicted for his or her thoughts, regardless of his or her deeds." (*Id.* at pp. 578-579.) The *Wallace* court proposed that a lewd act instead be defined as, "any touching of a body of the child which to an *objectively reasonable person* is sexually indecent or tends to arouse sexual desire." (*Id.* at p. 579, original italics.)

The 1993 revision of CALJIC No. 10.41 attempted to incorporate the definition of a lewd act suggested in *People* v. *Wallace, supra,* 11 Cal.App.4th 568. CALJIC No. 10.41 now states, in pertinent part, "A lewd or lascivious act is defined as any touching of the body of a person under the age of fourteen years [with the specific intent to arouse, appeal to, or gratify the sexual desires of either party] [*which to an objectively reasonable person is sexually indecent or tends to arouse sexual desire.*]" (CALJIC No. 10.41 (1993 rev.) italics added.)[2] The comments to the 1993 revision state: "[The] 1993 revision is prompted by the case of *People* v. *Wallace* (1992) [11 Cal. App.4th 568 (14 Cal.Rptr.2d 67)]. Traditionally, the definition of a lewd act has been touching, innocuous or not, coupled with a specific intent. The Wallace court has posited a different definition, requiring that the act be by itself lewd. The trial court will have to choose which definition is appropriate."

In this case, the trial court resolved the dilemma concerning which definition to use by giving both definitions to the jury, in the following instruction: "A lewd or lascivious act is defined as any touching . . . with the specific intent to arouse, appeal to, or gratify the sexual desires of either party *or* which to an objectively reasonable person is sexually indecent or tends to arouse sexual desire."

Appellant's primary contention is that, because this instruction left the jury to decide which definition of a lewd act to apply, the jury may have convicted him based on the traditional definition of a lewd act as "any

---

[2]The italicized language represents the revision to this instruction based upon *People* v. *Wallace, supra.*

touching" with the requisite specific intent. He contends that the traditional definition of a lewd act is erroneous, and that instead the court should have given only the more restrictive definition proposed by *Wallace*, and incorporated in the 1993 CALJIC revision.

▮ There is a substantial split of authority concerning the correct definition of a lewd act. (See, e.g., *People* v. *Filson* (1994) 22 Cal.App.4th 1841 [28 Cal.Rptr.2d 335] [court reversed conviction on other grounds and remanded with instruction to use the *Wallace* definition on retrial]; *People* v. *Sharp* (1994) 29 Cal.App.4th 1772 [36 Cal.Rptr.2d 117] [agrees that the pre-*Wallace* definition could be read as "conflating these two elements (i.e., lewd act and specific intent) but criticizes the *Wallace* definition as too restrictive]; *People* v. *Castro* (1994) 30 Cal.App.4th 390 [35 Cal.Rptr.2d 839] [Pre-*Wallace* definition of a lewd act is incorrect, but the revision based on *Wallace* is also misleading because of the reference to "an objectively reasonable person"]; *People* v. *Marquez* (1994) 28 Cal.App.4th 1315 [33 Cal.Rptr.2d 821] [pre-*Wallace* definition of a lewd act as "any touching" with the requisite intent is correct].)

In *People* v. *Scott* (1994) 9 Cal.4th 331, 344, fn. 7 [36 Cal.Rptr.2d 627, 885 P.2d 1040], our Supreme Court referred to this emerging split of authority, noting "that a few cases have rejected the notion that 'any' touching of an underage child violates section 288. These cases define the requisite act in somewhat narrower terms, as follows: '[A]ny touching of the body of a child which to an objectively reasonable person is sexually indecent or tends to arouse sexual desire.' [Citations.] [¶] On the one hand, this language correctly implies that the less overtly sexual the act, the more likely the inference that it was not intended to arouse either party. The cases have always assumed that the trier of fact looks to all the circumstances, including the charged act, to determine whether it was performed with the required specific intent. (See, e.g., *People* v. *Owen* (1945) 68 Cal.App.2d 617, 619 [157 P.2d 432].) On the other hand, by requiring an act which is patently 'sexual' in nature as well as intent, the *Wallace* [court] has created uncertainty as to the precise definition of a 'lewd or lascivious act.' " The court, in *Scott* found it unnecessary to decide which definition is correct because the convictions in *Scott* were all based on acts that were "clearly 'lewd' under any reasonable or existing construction of the statutory language." (*People* v. *Scott, supra*, at p. 344, fn. 7.)

The question whether the traditional definition of a lewd act needs to be modified, and whether the new definition proposed in *Wallace* should be adopted is now pending before the Supreme Court in several cases, including, *People* v. *Dablon* (1994) 34 Cal.App.4th 372 [34 Cal.Rptr.2d 761]

review granted January 5, 1995 (S043524), and *People* v. *Carson* (1994) 35 Cal.App.4th 432 [36 Cal.Rptr.2d 790] review granted March 16, 1995 (S044349), a decision that upheld the traditional definition of a lewd act, and offered an incisive critique of the *Wallace* definition.

We are persuaded by the analysis of *People* v. *Marquez, supra*, 28 Cal.App.4th 1315 and *People* v. *Sharp, supra*, 29 Cal.App.4th 1772, that the alternative definition of a lewd act proposed by the *Wallace* court, and incorporated in the 1993 revision of CALJIC No. 10.41, unduly restricts the application of section 288, subdivision (a), by requiring that the jury find the "touching" is lewd without regard to the intent with which the touching is done. These criticisms of the alternative definition proposed in *Wallace*, have also persuaded us that the question whether the defendant has committed a "lewd act" must be determined in light of all of the circumstances, including the defendant's intent. Accordingly, we shall uphold the traditional definition of a lewd act, and disapprove our decision in *People* v. *Gaglione* (1994) 26 Cal.App.4th 1291 [32 Cal.Rptr.2d 169], to the extent that it is to the contrary.[3]

The *Wallace* court correctly observed that one of the elements of a section 288, subdivision (a), offense is the commission of a "lewd act" upon or with the body of a child. ■ Indeed the primary distinction between section 288, subdivision (a), and section 647.6 is that the former requires that a touching or constructive touching occur, and that the touching is lewd. It is this type of overt contact, or intrusion upon the body of the child done with lewd intent, that distinguishes a section 288, subdivision (a), offense from the less serious offense defined by section 647.6. (*People* v. *Self* (1993) 12 Cal.App.4th 1222, 1226 [16 Cal.Rptr.2d 67].) ■ The standard CALJIC instructions specifically inform the jury that one of the elements of the offense is the commission of a lewd act, in addition to a finding that the lewd act was committed with specific intent to arouse the desire.

We, however, find nothing in the language of section 288, subdivision (a), to support the *Wallace* court's further conclusion that the jury must be

---

[3]In *People* v. *Gaglione, supra*, 26 Cal.App.4th 1291, this court agreed that the traditional definition of a lewd act in CALJIC No. 10.41 was erroneous, reasoning that it could be construed to permit conviction of the defendant based on an "innocuous touching." We explained that, "[i]t has long been held that a 'lewd or lascivious act' within the meaning of section 288 is not confined to genital touching . . . [n]evertheless the touching must be lewd." (26 Cal.App.4th at p. 1298.) We did not, in *Gaglione*, reach the question whether the definition of a lewd act suggested in *Wallace*, and included in the 1993 revision to CALJIC must be used instead, because the "touching" underlying the conviction, i.e., directing a child to touch the defendant's penis, was unequivocally lewd under either definition, and therefore any error was harmless. (*Ibid.*)

instructed that a lewd act has been committed only if it finds that the touching itself is "sexually indecent" or tends to arouse sexual desire, without regard to defendant's subjective intent. This construction precludes application of section 288, subdivision (a), when the act underlying the offense appears innocuous, but is not if considered in light of the defendant's intent. In *People* v. *Scott, supra*, 9 Cal.4th 331, 341-344, the court emphasized that section 288 plays a critical role in the statutory scheme defining sexual offenses committed upon children. ▮ "Courts have long assumed that section 288 protects underage victims from a broad range of sexually motivated acts. In general, a statutory violation is said to occur when the defendant 'touches' a child under the age of 14 with the requisite specific intent. (*People* v. *Raley* (1992) 2 Cal.4th 870, 907 [8 Cal.Rptr.2d 678, 830 P.2d 712]; *People* v. *Mickle* (1991) 54 Cal.3d 140, 175-176 [284 Cal.Rptr. 511, 814 P.2d 290]; *People* v. *O'Connor* (1992) 8 Cal.App.4th 941, 947 [10 Cal.Rptr.2d 530]; *People* v. *Gilbert* (1992) 5 Cal.App.4th 1372,1380 [7 Cal.Rptr.2d 660]; *People* v. *Austin* (1980) 111 Cal.App.3d 110, 112-115 [168 Cal.Rptr. 401]; *People* v. *Dontanville* (1970) 10 Cal.App.3d 783, 795-796 [89 Cal.Rptr. 172]; *People* v. *Nothnagel* (1960) 187 Cal.App.2d 219, 225 [9 Cal.Rptr. 519] [remaining citations omitted].) . . . [¶] Application of section 288 to a wide variety of sexually motivated acts promotes the statutory purpose in several ways. Where the defendant commits an act under circumstances that are prohibited by both section 288 and another sex crime statute, a violation under either or both statutes may be charged and found. As a result, the statute provides the prosecution with broad discretion to tailor the charges to the evidence in a particular case—an important concern where young victims might not remember or be able to describe the precise manner in which they were assaulted. Section 288 also permits the conviction of an individual who touches a child in a lewd and harmful way, even though there is no evidence that a sex crime occurred under any other statutory provision." (9 Cal.4th at pp. 342-344, fns. omitted.)

▮ Thus, our Supreme Court has held section 288, subdivision (a), applies to a "wide variety of *sexually motivated acts*." The *Wallace* definition of a lewd act is inconsistent with the broad statutory definition of a section 288, subdivision (a), offense, because it restricts the application of section 288, subdivision (a), only to acts that the jury may determine to be "sexually indecent," without regard to the intent with which the defendant performed the act. As we observed in *People* v. *Gaglione, supra*, 26 Cal.App.4th 1291, 1298, the jury must decide whether the touching was "innocuous" or "lewd or lascivious." That determination, however, necessarily depends upon the defendant's intent, not the sexual standards of an objectively reasonable person. The court in *People* v. *Sharp, supra*, 29 Cal.App.4th 1772, observed that conduct which appears innocuous, such as "dang[ling]" a child's hair,

and rubbing her back may be lewd and lascivious given a sexual intent. (*Id.* at pp. 1792-1794.) Conversely, some apparently "sexual" contact, may be "innocuous" because of the intent behind the touching. For example, rubbing a child's genital area is lewd if the intent is to arouse the child or gratify the defendant's sexual desires, but is innocuous if the intent is to wash the child. Similarly, appellant's act of displaying Kerlett's bare buttocks for the camera could be perceived as merely playful "mooning," or as a lewd act carried out under the guise of a game. The ultimate determination as to which it was necessarily requires consideration of appellant's intent. Instructing the jury that they may not consider the defendant's intent in determining whether the act itself is lewd removes from the jury's consideration a critical factual circumstance, and narrows the scope of section 288, subdivision (a), to only those acts that appear on their face to be "sexual." The defendant's intent and act must be considered together to effectuate the statutory purpose of proscribing a "wide variety of sexually motivated acts" that involve touching "a child in a lewd and harmful way, even though there is no evidence that a sex crime has occurred under any other statutory provision." (*People* v. *Scott, supra,* 9 Cal. 4th at pp. 343-344.)

The traditional definition of a lewd act as "any touching" with the requisite intent, recognizes that whether an act is lewd or innocuous cannot be determined without regard to the intent with which it is done. Moreover, by not attempting to limit the type of touching that may be found lewd, this definition recognizes the fact that sexual behavior, especially deviant sexual behavior towards children, encompasses a wide range of conduct that would not be immediately recognizable as "sexual" except when considered from the defendant's perspective, and in light of his or her intent. For these reasons, prior to *Wallace,* the traditional definition of a lewd act, which includes consideration of the defendant's intent in determining whether a touching is lewd and lascivious, had been "approved for use for nearly a quarter of a century." (*People* v. *Sharp, supra,* 29 Cal.App.4th at p. 1790, fn. 8.) As the court explained over 40 years ago, in *People* v. *Hobbs* (1952) 109 Cal.App.2d 189, 192 [240 P.2d 411]: "In all cases arising under [section 288] the purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done. In *People* v. *Owen* [1945], 68 Cal.App.2d 617, 620 [157 P.2d 432], it is said that 'It is not the accomplishment but the intent of the party that is the basis of the commission of the acts condemned in Penal Code section 288.' If intent of the act, although it may have the outward appearance of innocence, is to arouse, or appeal to, or gratify the lust, the passion or the sexual desire of the *perpetrator* it stands condemned by the statute, or, if it is intended to arouse feelings of passion or sexual desire in the *child,* it likewise stands condemned." (*People* v. *Sharp, supra,* 29 Cal.App.4th at p. 1791, italics in original.)

Nor does the definition of a lewd act as any touching with the requisite intent, permit a defendant to be "convicted for his or her thoughts regardless of his or her deeds." (*People* v. *Wallace, supra,* 11 Cal.App.4th 568, 579.) Instead, it is the union of the act and the intent that constitutes the offense. (*People* v. *Marquez, supra,* 28 Cal.App.4th 1315, 1325.) A defendant is convicted for carrying his or her thoughts beyond contemplation, and actually using a child for purposes of sexual stimulation or gratification. (*Ibid.*)

▆▆▆ Having clarified the applicable law, we now consider the instruction given in this case. Although the comment to CALJIC No. 10.41 provides no guidance as to which definition to select, and the uncertainty in the law has generated substantial confusion, the trial court should have selected one of the definitions to use rather than leaving the jury to decide which definition to follow. Nevertheless, if, as appellant suggests, the jury did convict appellant under the traditional definition of a lewd act as "any touching" with the requisite intent, instead of under the definition based on *Wallace,* no error occurred. To the extent that one or more of the jurors instead applied the *Wallace* definition, appellant could not have been prejudiced because this definition is more restrictive, and any juror that found the acts to be lewd under the *Wallace* definition would, a fortiorari, have convicted him under the traditional definition that we now uphold. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Appellant further argues that the court's modification of the 1993 revision of CALJIC No. 10.41, offering the two definitions in the alternative, might have been understood by the jury as permitting a conviction without a finding that the defendant had the intent to arouse or gratify the sexual desires of either party. He asserts the jury might have believed it should convict him of the section 288, subdivision (a), violation, if it found that defendant touched the victim with the required intent "or" if it found the defendant touched the victim, "in a way which to an objectively reasonable person" would appear lewd, but with no intent. This construction is not reasonable if the instructions are considered as a whole. (*People* v. *McPeters* (1992) 2 Cal.4th 1148, 1191 [9 Cal.Rptr.2d 834, 832 P.2d 146]; *People* v. *Kelly* (1992) 1 Cal.4th 495, 526-527 [3 Cal.Rptr.2d 677, 822 P.2d 385].) The court also instructed the jury that, ". . . there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator." The court further informed the jury that, "In order to prove the crime, each of the following elements must be proved. 1. A person committed a lewd or lascivious act upon the body of a child, 2. The child was under 14 years of age, 3. *Such act was committed with the specific intent to arouse, appeal to, or gratify the lust, passions or sexual desires of such person or of the child.*" (Italics added.) No reasonable juror would have understood this

instruction as permitting a conviction without a finding that appellant had the required specific intent.

## II.

*Substantial Evidence Supports the Section 288, Subdivision (a), Conviction*

The section 288, subdivision (a), conviction was based on the act of placing Kerlett over appellant's knees, pulling her pants down and displaying her bare buttocks to the camera. Appellant first argues that the evidence of a lewd act was insufficient because this act is not "sexual in nature to an objectively reasonable person." We have held that the correct definition of a lewd act is, instead, "any touching . . . with the specific intent to arouse, appeal to, or gratify the sexual desires of either party." The evidence was sufficient to support a finding that appellant committed a lewd act under this standard. (See *People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

The evidence was conflicting concerning whether appellant actually touched Kerlett's bare buttocks. J.J. did, however, testify that appellant touched Kerlett's buttocks with his hands. Even if appellant did not actually touch Kerlett's buttocks, section 288, subdivision (a), does not require that any particular part of the body be touched. (*People* v. *Raley* (1992) 2 Cal.4th 870, 907 [8 Cal.Rptr.2d 678, 830 P.2d 712].) The contact involved in placing Kerlett over his knees, or in pulling down her pants would also suffice. There was some conflict in the evidence over whether appellant himself pulled down Kerlett's pants, because J.J. wasn't sure if he actually saw appellant do this. Rosalia, however unequivocally testified that she saw appellant pull Kerlett's pants down and Kerlett confirmed this.

In addition, substantial circumstantial evidence supported the inference that appellant performed this act with the requisite intent. Earlier in the day he bought the children ice cream and allowed them to see his penis protruding from his shorts. He brought the children to his home and showed them a pornographic film. J.J. was so sure that the film was inappropriate that he wanted to leave, and demanded that his sister leave too. When the children decided to stay in order to play with the video camera appellant bared his own buttocks and directed the children to look at him. When he became more bold, and placed Kerlett over his knee and pulled down her pants, J.J. recognized immediately that this went beyond playfulness. J.J. stopped the activity and demanded to be taken home. Appellant then told the children not to say anything to their parents. This evidence of appellant's intent distinguishes the case from *People* v. *Mansell* (1964) 227 Cal.App.2d 842 [39

544

Cal.Rptr. 187], upon which appellant heavily relies, in which the court affirmed the dismissal the information alleging two section 288, subdivision (a), offenses on the ground that there was insufficient evidence of the required specific intent. (227 Cal.App.3d at pp. 846-847.)

### III.

#### *Failure to Give Unanimity on Count 2\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV.

#### *Exclusion of Testimony*

 Appellant sought to introduce a note written by the mother of J.J. and Rosalia, during a period when she was homeless and stayed with appellant's friend Hilda Gilgannon. The note read in part: "I do not want to file any charges against Joe Lavesky and I think I have some very important information in this case and I am will[ing] to testify in court to explain every[thing] about the case and believe [sic] the[y] just want to get some money from Joe['s] stepmother they lied about alot [sic] of things in this case." He also sought to introduce a series of statements she allegedly made to Jerry Lipkin, an attorney, that appellant contended were based on statements the children had made to her.

Outside the presence of the jury, she testified that she was homeless and under the influence of drugs when she wrote the note, and she did not recall giving it to anyone. She did recall having a conversation with a man at Hilda Gilgannon's house, but did not recall Lipkin or any details of their conversation. She did not recall telling Lipkin that: Kerlett had pushed the tape into the VCR and started it; the kids say that Kerlett jumped on [appellant's] lap, Kerlett's pants were baggy and probably came down by themselves; Kerlett likes to make up stories and likes attention; Kerlett's father called Kerlett's vagina his "toy," or that he suggested asking for $50,000 to drop the charges.

Lipkin testified by way of an offer of proof that she did make these statements to him, although he could not confirm that all of her statements were based on things the children had said to her.

The court correctly ruled that Lipkin could not testify to the statements that the mother herself could not recall having made. Lipkin's testimony was

*See footnote, *ante*, page 530.

not admissible as prior inconsistent statements because they were not inconsistent with her testimony that she did not recall making them. (Evid. Code, § 1235; *Clifton* v. *Ulis* (1976) 17 Cal.3d 99, 104-105 [130 Cal.Rptr. 155, 549 P.2d 1251].) The trial court specifically found that the mother was not being evasive. (See *People* v. *Green* (1971) 3 Cal.3d 981, 988 [92 Cal.Rptr. 494, 479 P.2d 998] [deliberate evasion constitutes implied testimony so that prior statements inconsistent with implied testimony is admissible].)

Nor would Lipkin's testimony be admissible as prior inconsistent statements of the children for several reasons: appellant's counsel did not lay the appropriate foundation pursuant to Evidence Code section 770, by asking the children whether they had made such statements to their mother and giving them an opportunity to explain them. It was not an abuse of discretion to refuse defense counsel's request to recall the children for that purpose. Defense counsel had the opportunity to lay the foundation during cross-examination and did not do so. The court was also concerned that the children had been emotionally distraught during their testimony, and that to recall them would cause further distress. In any event, even with the appropriate foundation, the statements could only have come in as prior inconsistent statements of the children if their mother testified as to what the children told her. Appellant, however, wanted Lipkin to testify as to what the mother told him that the children told her. As we have already explained Lipkin's testimony could not come in as prior inconsistent statements. Thus, appellant failed to establish that each level of hearsay fell within the prior inconsistent statements exception.

All of appellant's other arguments as to the admissibility of Lipkin's testimony concerning each of the statements the mother allegedly made to Lipkin fail for the same reason: Appellant failed to establish a hearsay exception for Lipkin to testify as to what she said to him.

Assuming arguendo that the written statement might have been admissible because, outside the jury's presence, she did acknowledge writing it but stated it was false, exclusion of the statement was harmless. The note did not identify who had "lied" or how she knew that "they" had lied. The statement in her note concerning the efforts to obtain money in exchange for dropping the charges was cumulative of the testimony offered by Hilda Gilgannon, and corroborated by Cheryl Gilbertson. (*People* v. *Watson*, *supra*, 46 Cal.2d 818, 836.)

## V.

### *Sentencing*

 Appellant argues that the trial court could not use the fact of his prior section 288, subdivision (a), conviction as a basis for sentencing him, pursuant to section 667.51, subdivision (d), to a term of 15 years to life for the current section 288, subdivision (a), conviction, and as a basis for punishing the section 647.6 violation as a felony instead of a misdemeanor.

Section 667.51, subdivision (d) provides that, "A violation of section 288 by a person who has been previously convicted two or more times of an offense listed in subdivision (c) is punishable as a felony by imprisonment in the state prison for 15 years to life." The offenses listed in subdivision (c) of section 667.51 include sections 261 and 288. The information alleged, and the court found true, prior convictions under both of those sections.

Section 647.6 provides that any person who violates that section after a prior conviction under section 288 is "punishable by imprisonment in the state prison for two, four, or six years." The information alleged the same section 288, subdivision (a), conviction in this count.

Appellant argues that the sentences imposed under sections 667.51, subdivision (d), and 647.6 are enhancements, and that section 654 prohibits use of the same prior conviction to enhance both sentences.[4] We find the contention to be without merit for two reasons. First, neither section 647.6, nor section 667.51 imposes a sentence enhancement. An enhancement is defined by California Rules of Court, rule 405(c) as "an additional base term of imprisonment added to the base term." Sections 647.6 and 667.51, subdivision instead prescribe a higher prison term based on the appellant's status as a recidivist offender. The sentence imposed is in lieu of, not in addition to the base term on the substantive offense. In *People* v. *Decker* (1988) 199 Cal.App.3d 694, 697 [245 Cal.Rptr. 40], the court specifically held that the indeterminate term imposed pursuant to 667.51, subdivision (c) [now section 667.51, subdivision (d)] is not an enhancement. (See also *People* v. *Rodriguez* (1984) 152 Cal.App.3d 289, 297 [199 Cal.Rptr. 433].) The same analysis applies equally to section 647.6.

Second, even if these provisions were "enhancements," section 654 would not preclude sentencing appellant under both provisions, even though the

---

[4]The court in *People* v. *Jones* (1993) 5 Cal.4th 1142, 1152 [22 Cal.Rptr.2d 753, 857 P.2d 1163], acknowledged that a split of authority exists on the question whether section 654 applies to enhancements, but did not reach the issue.

same section 288, subdivision (a), conviction was alleged with respect to each offense. The question whether section 654 applies to "enhancements" has generated a split of authority among the appellate courts. (Compare *People* v. *Rodriguez* (1988) 206 Cal.App.3d 517, 519 [253 Cal.Rptr. 633] with *People* v. *Hopkins* (1985) 167 Cal.App.3d 110, 117 [212 Cal.Rptr. 888]; see also *People* v. *Gonzales* (1993) 20 Cal.App.4th 1607, 1610, fn. 3 [25 Cal.Rptr.2d 305]; *People* v. *Kee* (1991) 228 Cal.App.3d 1203, 1208 [279 Cal.Rptr. 643].) The court in *Decker,* however, held that section 654 did not preclude the imposition of four consecutive fifteen-year to life terms pursuant to section 667.51, with each life term based on the same two prior convictions. The court reasoned that section 654 precludes multiple punishment under different code provisions for a "single 'act or omission.' [Citation.] Nothing in that section prohibits the use of the same priors to determine the appropriate sentence on more than one offense. Section 667.51, subdivision (c) [now (d)], like other recidivist punishment statues which impose increased sentences for repeat offenders, merely specifies the applicable sentence upon the present conviction for one with a certain criminal history. . . . While the status calls for the increased sentence, it is the new criminal conduct rather than the status which is being punished. Therefore, section 654 does not apply." (*People* v. *Decker, supra,* 199 Cal.App.3d 694, 698; see also *People* v. *Skeirik* (1991) 229 Cal.App.3d 444, 465-466 [280 Cal.Rptr. 175] [sentence of more than one life term pursuant to section 667.7 based on the same prior conviction, not an enhancement and not precluded by § 654]; *People* v. *Burkett* (1991) 1 Cal.App.4th 971, 977 [2 Cal.Rptr.2d 330] [same].)[5] This same analysis applies with equal force to section 647.6, which specifies increased penalties depending on the status of the offender.

Appellant also contends that the court violated the prohibition against dual use of facts in imposing consecutive sentences. The court relied in part on the fact that appellant's "prior convictions are numerous" and "his past violent conduct." Appellant argues that the court could not rely on his prior convictions for rape and section 288, subdivision (a), in support of these reasons for imposing consecutive sentences because they were also used to impose the increased penalties specified in sections 667.51, subdivision (d) and 647.6. Assuming arguendo that the prohibition against dual use applies, the court's sentencing choice is nevertheless supported by another

---

[5]Appellant relies on *People* v. *Ramos* (Cal.App.) in his reply brief. That decision was ordered not published several months before appellant's reply brief was filed.

factor cited by the court: appellant was on parole when he committed the current offenses. A single factor is sufficient to support the trial court's decision, and any error in relying on the additional factors is harmless. (*People* v. *Burrell-Hart* (1987) 192 Cal.App.3d 593, 601 [237 Cal.Rptr. 654].)

CONCLUSION

The judgment is affirmed.

Strankman, P. J., and Dossee, J., concurred.

Petitions for a rehearing were denied June 29, 1995, and the opinion was modified to read as printed above.