Filed 1/30/24  P. v. Turney CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>TAMMY RENEE TURNEY,<br><br>        Defendant and Appellant. | C096893<br><br>(Super. Ct. No. 08F09808) |

Defendant Tammy Renee Turney appeals from the trial court's denial of her petition for resentencing pursuant to Penal Code section 1172.6.[1]  She argues there was insufficient evidence to support the trial court's conclusions that she was guilty of express malice murder and that she was a major participant in a robbery who acted with

---

[1] Undesignated statutory references are to the Penal Code.  Defendant filed her resentencing petition under former section 1170.95.  Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6, with no relevant change.  (Stats. 2022, ch. 58, § 10.)  For ease of exposition, we will cite to the current section 1172.6 throughout this opinion.

1

reckless indifference to human life. We will affirm the trial court's order denying the petition for resentencing.

## I. BACKGROUND

In 2010, defendant pled no contest to first degree murder (§ 187, subd. (a)). The trial court sentenced defendant to 25 years to life imprisonment. In 2019, defendant petitioned to vacate her conviction and to be resentenced pursuant to section 1172.6. The court denied that petition at the prima facie stage. On appeal, this court reversed that denial and remanded for the trial court to issue an order to show cause and hold a hearing to determine whether defendant was entitled to relief under section 1172.6. (*People v. Turney* (Oct. 12, 2021, C091716) [nonpub. opn.].)

At the evidentiary hearing, both parties relied on the April 22, 2009, preliminary hearing testimony of Sacramento County Sheriff's Department Detectives Daniel Cabral and Ken Clark, which we summarize here. On November 26, 2008, Detective Cabral responded to a crime scene where the victim, David, had been found deceased in the trunk of a white Ford Taurus. The victim weighed approximately 300 pounds and had been shot in the back of the head. Detective Clark interviewed defendant, who told him she had been residing in the three-bedroom home of Heather and Heather's three young sons. Defendant was at Heather's home on the evening of November 24, 2008, along with Curtis Chapman, defendant's son Richard Hundley, Heather's stepdaughter, Desiree, and David, who was there to visit Desiree. David was showing pictures on his phone of cars that he owned. He also claimed he had an AK-47 in his white Ford Taurus parked in the driveway and that he owned other guns.

At some point, defendant picked up David's keys and put them down her pants. Initially, defendant told Detective Clark it was possible she had inadvertently picked up David's keys. But she later admitted she had lied and that she wanted the keys so that

2

she or her son could go through David's car in the driveway.[2]  Later that evening, Hundley got the keys from defendant and looked through David's car but did not find an AK-47.  The only thing taken from the car "was a couple of CDs" and "maybe some Newport cigarettes."  Hundley then returned the keys to defendant.

After David realized his keys were missing, Desiree went from bedroom to bedroom looking for them.  Desiree asked defendant about the missing keys, and defendant lied that she did not know where they were.  David tried to find a locksmith who could help him get into his car so he could return home, but nobody was available.  David slept over on the couch.

The following morning, Chapman came to defendant's bedroom and asked for David's keys, which defendant gave to Chapman.  Chapman also told defendant at some point that morning, "we're gonna have to do him."[3]  Defendant claimed that "she did not believe that he would really do this."  Around 7:30 a.m., Heather and Desiree left to walk Heather's sons to school.  When defendant came out of her bedroom, she saw David was lying dead on the kitchen floor with blood coming out of his head.

Chapman began to move David's body toward the garage where Heather's car was parked.  Hundley left to get Heather's car keys and, when he returned, put Heather's car in the driveway and David's car in the garage.  Defendant and Hundley assisted Chapman in putting David's body into the trunk of David's car because Chapman was unable to move the body alone.  Defendant then walked to a nearby market to buy bleach and cleaned up the blood in the kitchen as best she could.  After Chapman drove the body

---

[2] Defendant later changed her story again and said that she had taken David's keys because Chapman and Hundley approached her and said they wanted to look inside David's car for his "nice" gun.

[3] Both parties state that Chapman made this remark to defendant *after* defendant gave Chapman the keys.  But the record only indicates that Chapman made this remark to defendant at some point that morning "after she woke up."

away, he returned to Heather's home, took a shower, and changed his clothes. He then gave his clothes and David's empty wallet to defendant, who took them to her former residence and attempted to burn them.

The trial court denied defendant's petition, concluding, beyond a reasonable doubt, that: (1) a robbery had occurred; (2) defendant directly aided and abetted the robbery; (3) defendant was a major participant who harbored reckless indifference to human life at the time; and (4) defendant was "guilty of murder under [an] express malice aforethought [theory]." In the court's view, "there is no need, if the only purpose of this is to get into the man's car to see if he has that AK-47, to keep the man overnight. And the reason for that is clear, because the kids are home, and none of this happens until the kids are taken off to school the next morning. That's why the keys are important. [¶] . . . [T]heir conduct speaks volumes. . . . [T]hey don't have to not have the kid[s] there if all they want to do is a simple-force robbery. It's clear at that point that more is contemplated." Further, "[defendant] was a major participant in that she did have the keys; having the keys, keeping [David] there, who . . . was a mark from the beginning when he started showing pictures and talking about guns. [¶] One does not have to ignore common sense and the ways of the world to determine that these people intend to at least take [David] for the things that he has there; and clearly, because of what happened, to use force in order to accomplish that. And [defendant] is a major participant in facilitating that process. [¶] . . . [C]onsidering all the evidence as a whole, it cannot be argued that, 'We're going to have to do him,' has any meaning other than . . . that Mr. Chapman has announced that his intention is to kill [David]."

At a subsequent hearing, the trial court explained it had considered defendant's admissions to Detective Clark as well as the percipient observations of both detectives regarding the make of the car, where it was found, and the weight of the body when reaching its decision.

Defendant filed a timely notice of appeal.

4

## II. DISCUSSION

### A. *Senate Bill No. 1437*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

Senate Bill No. 1437 amended section 188 to provide in part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) This language eliminated the use of the natural and probable consequences doctrine in murder prosecutions but left intact implied malice murder for direct aiders and abettors. (*People v. Gentile* (2020) 10 Cal.5th 830, 838-839, 846-848, 850.) The bill also added section 189, subdivision (e) to the Penal Code, which limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill No. 1437 also authorized, through section 1172.6, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of the

5

changes to sections 188 and 189. (*People v. Strong* (2022) 13 Cal.5th 698, 708.) Where, as here, the petitioner has made the requisite prima facie showing, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).) At that hearing the court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony. (§ 1172.6, subd. (d)(3).)

B.      *Standard of Review*

"Ordinarily, a trial court's denial of a section 1172.6 petition is reviewed for substantial evidence." (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) Nonetheless, defendant contends that independent review of the record, with no deference to the trial court's findings, is warranted because the hearing involved no live testimony and no credibility determinations. We previously considered and rejected this argument in *People v. Njoku* (2023) 95 Cal.App.5th 27, 42, explaining that independent judgment review is not warranted given the nature of the claims at issue in a section 1172.6 evidentiary hearing. Accordingly, the substantial evidence standard of review is appropriate.

"In reviewing the trial court's findings for substantial evidence, we apply well settled principles. 'We " 'examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the necessary fact] beyond a reasonable doubt.' " [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt.' " (*People v. Oliver*

6

(2023) 90 Cal.App.5th 466, 480.)  Reversal is not warranted unless " ' "upon no hypothesis whatever is there sufficient substantial evidence to support the [trial court's ruling]." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

C.     *Analysis*

The parties agree that, based on the trial court's findings, the trial court concluded that defendant could still be found guilty of murder under section 189, subdivisions (e)(2) and (e)(3).  But defendant contends that substantial evidence does not support the trial court's findings.  We disagree.

As a threshold issue, defendant argues there is no substantial evidence defendant aided and abetted a robbery at all.  She admits she aided and abetted *theft* when she took David's keys so her son could take some items from David's car on the night of November 24, 2008.  She also acknowledges that a robbery occurred the following day, as the record indicates Chapman was in possession of David's wallet after the murder.  Defendant maintains, however, there is no substantial evidence defendant ever intended to take property from David by force or fear, a requirement of robbery.  (See § 211 ["Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear"].)

The record establishes that:  (1) defendant took David's keys so that she or an accomplice could steal items from David's car; (2) after Hundley stole from David's car, defendant held on to David's keys; (3) defendant lied about not knowing where David's keys were when asked; and (4) David slept over because he did not have his keys.  From this evidence, the trial court could have reasonably inferred that defendant kept David's keys to force him to sleep over.  This would permit defendant, Hundley, and Chapman to, at a minimum, rob David after all the other witnesses left the home in the morning.  Accordingly, we reject defendant's argument that there is no substantial evidence she aided and abetted a robbery.

7

Next, defendant argues there is no substantial evidence that she intended to kill under section 189, subdivision (e)(2). We again disagree. The trial court reasonably inferred that defendant, Hundley, and Chapman targeted David after he started showing pictures of guns. As discussed, it can be reasonably inferred that defendant kept David's keys so that David would be stranded at Heather's home until the next morning when no witnesses would be present. Chapman told defendant that following morning, "we're going to have to do him," and there is no evidence that defendant protested to Chapman's declaration or took actions to prevent David from being killed. While defendant told Detective Clark that she did not believe Chapman, the court did not have to credit her self-serving assertion. Defendant's conduct after the murder is also telling. Upon finding him dead, defendant helped dispose of the body, went to the store to purchase bleach, attempted to sanitize the murder scene, and burned evidence. And nothing in the record suggests defendant was surprised at all to find David dead. This conduct supports the conclusion that defendant had intended to kill. (Cf. *People v. Pitts* (1990) 223 Cal.App.3d 606, 892-893, superseded by statute on another ground as stated in *People v. Levesque* (1995) 35 Cal.App.4th 530, 536-537 ["Proof of intent may be made by way of inferences from a defendant's volitional acts which are done with knowledge of the probable consequences, and presence at the scene of the crime, while insufficient of itself to make one an aider and abettor, is one factor which tends to show intent. Other factors which may be considered include the defendant's failure to take steps to prevent the commission of the crime, companionship, and conduct before and after the crime"].)

Lastly, defendant contends the evidence is insufficient to establish she was a major participant in the robbery who acted with reckless indifference to human life under section 189, subdivision (e)(3).

Our Supreme Court has set out the elements required to establish a defendant was a major participant in a felony who acted with reckless indifference to human life. The former means a defendant's personal involvement must be "substantial" and greater than

8

the actions of an ordinary aider and abettor to an ordinary felony murder. (*People v. Banks* (2015) 61 Cal.4th 788, 802.) The ultimate question "is 'whether the defendant's participation "in criminal activities known to carry a grave risk of death" [citation] was sufficiently significant to be considered "major." ' " (*People v. Clark* (2016) 63 Cal.4th 522, 611.)

Our Supreme Court identified the following list of nonexclusive factors to consider when analyzing whether a defendant acted as a major participant: (1) " 'What role did the defendant have in planning the criminal enterprise that led to one or more deaths?' "; (2) " 'What role did the defendant have in supplying or using lethal weapons?' "; (3) " 'What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?' "; (4) " 'Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?' "; and (5) " 'What did the defendant do after lethal force was used?' " (*People v. Clark, supra*, 63 Cal.4th at p. 611, quoting *People v. Banks, supra*, 61 Cal.4th at p. 803.) It is not necessary that each factor be present, but the presence of no single factor is dispositive. Instead, "[a]ll may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*Banks, supra*, at p. 803.)

Our Supreme Court has also laid out factors to ascertain whether a participant in a crime acted with reckless indifference. These factors include: (1) a defendant's knowledge of weapons, and use and number of weapons; (2) a defendant's physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) the duration of the felony; (4) a defendant's knowledge of the cohort's likelihood of killing; and (5) a defendant's efforts to minimize the risks of the violence during the felony.

(*People v. Clark, supra*, 63 Cal.4th at pp. 618-623.) No one factor is required or dispositive. (*Id*. at p. 618.)

Based on these factors, there was substantial evidence to support the finding that defendant was a major participant in the robbery who acted with reckless indifference to human life. As to being a major participant, there is evidence defendant: (1) helped plan the criminal enterprise by taking and retaining David's keys; (2) was present at the scene of the killing; (3) was aware that Chapman intended to use lethal force and did nothing to prevent the actual murder; and (4) extensively helped cover up the killing after lethal force was used. As to whether defendant acted with reckless indifference to human life, again, defendant was present at the house where the killing occurred, knew that Chapman intended to kill, and made no effort to minimize that risk of violence. The trial court's conclusions are adequately supported by substantial evidence.

## III.  DISPOSITION

The trial court's order denying defendant's section 1172.6 petition is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

MAURO, Acting P. J.

/S/

_____

WISEMAN, J.*

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.